[No. B215102. Second Dist., Div. Four. Apr. 23, 2010.]

JAMES E. FULTON, JR., Plaintiff and Appellant, v.
MEDICAL BOARD OF CALIFORNIA, Defendant and Respondent.

## COUNSEL

Martin & McCormick, John D. Martin and Kathy J. McCormick for Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, Paul C. Ament and Vladimir Shalkevich, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**EPSTEIN, P. J.**—Appellant James E. Fulton, Jr., appeals from a judgment denying his claim for declaratory and injunctive relief against respondent, the Medical Board of California (the Board). Appellant was a licensed physician in California before surrendering his license in 2003 to settle disciplinary charges filed by the Board. Afterwards, the Board published disciplinary information about appellant on its Web site, including information about a medical malpractice judgment entered against him, and the surrender, retirement, and indefinite suspension of his licenses to practice medicine in other states. Appellant sued the Board, claiming that because he no longer was licensed in California, he was not a "licensed physician" or a "licensee" under Business and Professions Code section 2027 (and by implication the cross-referenced § 803.1),[1] and therefore the Board was not required to disclose the information. The trial court found the Board acted within its

---

[1] All statutory references are to the Business and Professions Code unless otherwise noted.

statutory mandate and denied appellant's claim.[2] He appeals, arguing the court erred in its interpretation of the statutes. We disagree, and hold that sections 803.1 and 2027 required the Board to publish the information.

## FACTUAL AND PROCEDURAL SUMMARY

Following the usual rules on appeal after a trial on the merits, we construe the facts in the light most favorable to the judgment. (*Woodman Partners v. Sofa U Love* (2001) 94 Cal.App.4th 766, 771 [114 Cal.Rptr.2d 566].)

Appellant was first licensed to practice medicine in California in 1970. Beginning in 1997, California and several other states initiated disciplinary actions against him. In 2002, appellant voluntarily surrendered his California license as part of a stipulated settlement with the Board; the surrender became effective in 2003. Shortly thereafter, the Board posted information on its Web site showing that appellant surrendered his California license in 2003. The same year, the Board changed its disclosure policy about individuals formerly licensed in California. Under its new policy, which remains its policy, information about disciplinary actions undertaken by the Board and in other states, felony convictions, and certain settlements and arbitration awards is available on the Internet. (See fn. 4, *post.*) The Board posted information about enforcement actions taken against appellant in other states while he was licensed in California, and updated disclosures as out-of-state cases proceeded. The disclosures included the surrender, retirement, and indefinite suspension of appellant's medical licenses in Florida, New York, and Louisiana, and a malpractice judgment entered against him in Orange County Superior Court. Actions initiated against appellant after he surrendered his California license were not disclosed, including the revocation of his Tennessee license in 2005.

Although appellant was no longer licensed to practice medicine in any state, he continued to work in a field closely related to medicine. Appellant gave three-day lectures in California and elsewhere for a company, Advanced Aesthetics Training Institute, about diseases of the skin, the causes and treatments of acne, and other dermatological topics. Attendees were given certificates signed by appellant as an "M.D."[3] Appellant's family had an ownership interest in a company, Vivant Pharmaceuticals (Vivant), that

---

[2] Appellant also claimed that the Board's actions violated his right to privacy contained in article I, section 1 of the California Constitution. He does not appeal the trial court's rejection of this claim and we do not discuss it.

[3] We note that it is a misdemeanor, under section 2054, for individuals who are not licensed to practice medicine in this state or another jurisdiction to use the title "M.D." in advertising materials. The record does not show any charges brought against appellant for violation of this statute.

produced dermatological products which appellant promoted at trade shows in various states, including California. Advertising materials for the products attributed the titles "Dr." or "M.D." to appellant, described him as a "Lead Formulating Consultant," and mentioned his "35 years of experience as a physician." Vivant's products were sold to the public through a Web site that described appellant's medical education, and claimed that he was a "leading researcher, cosmetic surgeon and dermatologist." Appellant answered questions on the Web site regarding the causes and treatments for skin conditions as "Dr_Fulton." The record does not show that the Web site disclosed that appellant was not licensed to practice medicine. An investigator from the Board purchased products from the Web site, which were delivered to California with an embossed inscription of appellant's signature, "James E. Fulton, M.D."

Appellant filed this action against the Board in 2008. He alleged that the Board's disclosures of his disciplinary record caused him to lose work opportunities and suffer "public and private ridicule and embarrassment." Some of Vivant's customers called the company and discussed, in an agitated manner, the information posted on the Board's Web site. While appellant was giving a lecture at a conference in Malaysia, the chairman of the conference received an e-mail referencing the Board's Web site, with the comment "shame, shame, shame." Appellant was not invited to subsequent conferences. He sought a declaratory judgment that the Board was not statutorily required to publish the disciplinary information, and an injunction prohibiting the Board from posting any information about him on its Web site. The matter proceeded to trial, and judgment was entered for the Board. This appeal followed.

## DISCUSSION

Appellant argues that sections 803.1 and 2027 do not require the Board to "post information regarding disciplinary actions against physicians who are no longer licensed by the State." Because this claim requires interpretation of sections 803.1 and 2027, we apply a de novo standard of review. (*Szold v. Medical Bd. of California* (2005) 127 Cal.App.4th 591, 596, fn. 4 [25 Cal.Rptr.3d 665].)

■ "In construing any statute, '[w]ell-established rules of statutory construction require us to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law.' [Citation.] 'We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context.' [Citation.] If the

statutory language is unambiguous, 'we presume the Legislature meant what it said, and the plain meaning of the statute governs.' [Citation.]" (*Whaley v. Sony Computer Entertainment America, Inc.* (2004) 121 Cal.App.4th 479, 484–485 [17 Cal.Rptr.3d 88].) "If, however, the statutory terms are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history." (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196].) The Board interprets sections 803.1 and 2027 to require that it disclose enforcement actions that occurred while former licensees were licensed in California, and to correct errors in disclosures. We accord respect and consideration to the Board's interpretation, but we apply our independent judgment in construing the statutes. (See *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7–8 [78 Cal.Rptr.2d 1, 960 P.2d 1031].)

■  Sections 803.1 and 2027 require the Board to disclose information about "licensees" and "licensed physicians" without explicitly stating whether the Board must make disclosures about individuals who no longer hold a license to practice medicine in this state. But provisions of the statutes demonstrate that the Legislature intended the disclosure requirements to apply to former license holders. Section 803.1, subdivision (a) requires the Board to disclose "any enforcement actions taken against a licensee by [the Board] or by another state . . . ." Enforcement actions include "[r]evocations, suspensions, probations, or limitations on practice ordered by the board, including those made part of a . . . stipulated agreement." (§ 803.1, subd. (a)(3).) By definition, "revocations" include licenses that have been revoked and hence are no longer valid, and it is reasonable to interpret this provision to apply to former license holders. Section 2027, subdivision (a)(1) requires that the Board post on the Internet enforcement actions set forth in section 803.1. Section 2027, subdivision (b)(1) requires that the Board post enforcement actions, including license revocations and malpractice judgments, on its Web site for a period of 10 years after the information comes within its possession, custody, or control without providing for its removal if an individual is no longer licensed in California. Limiting required disclosures to current licensees would render this provision ineffectual.

The legislative history and background of these statutes are consistent with this reading. Over the course of a decade, the Legislature expanded the substance and form of the Board's disclosure mandates. When originally enacted in 1993, section 803.1 required the Board to disclose to the public temporary restraining orders, suspensions, limitations on practice, and letters of reprimand. (Stats. 1993, ch. 1267, § 4.5, p. 7442, Sen. Bill No. 916 (1993–1994 Reg. Sess.) § 4.3.) In 1997, the Legislature added medical malpractice judgments, arbitration awards, and hospital disciplinary actions to the disclosure requirements. (Stats. 1997, ch. 359, § 4, p. 2471, Assem. Bill No. 103 (1997–1998 Reg. Sess.) § 4.) At the same time, it enacted section 2027, requiring the Board to post on the Internet information about the status

of a license and whether a licensee had been subject to discipline by the Board or another state. (Assem. Bill No. 103 (1997–1998 Reg. Sess.) § 7.) That bill's proponents argued that expanded disclosures would "enable consumers to make informed decisions about their physicians." (Sen. Com. on Business & Professions, Analysis of Assem. Bill No. 103 (1997–1998 Reg. Sess.) as amended June 22, 1997.) It was sponsored to allow the public easy access to disciplinary information about physicians, particularly information about medical negligence. (*Ibid.*) In 2002, section 803.1 was amended to require disclosure of revocations, including those made part of a stipulated agreement, and section 2027 was changed to require disclosure of enforcement actions set forth in section 803.1. (Stats. 2002, ch. 1089, § 6, Sen. Bill. No. 1950 (2001–2002 Reg. Sess.) §§ 6, 13.)

██ This history shows the Legislature intended that the Board disclose information about physicians' disciplinary records to protect consumers and prevent medical malpractice. In interpreting these statutes, we presume " ' "the Legislature intended reasonable results consistent with its expressed purpose, not absurd consequences." ' " (*Hellinger v. Farmers Group, Inc.* (2001) 91 Cal.App.4th 1049, 1056 [111 Cal.Rptr.2d 268].) In a literal sense, once a license is revoked, a former license holder is no longer a licensee. But public knowledge of the fact that a putative physician no longer holds a license to practice medicine in this state is central to the informative purpose of the statutes. Limiting the meaning of "licensee" to current license holders would defeat that purpose.

Perhaps in acknowledgment of this, appellant argues that the public would be equally protected if the Board only posted information showing when he surrendered his California license, without including information about his out-of-state license revocations and the medical malpractice judgment entered against him.[4] The facts of this case illustrate the correctness of the Board's interpretation of the statutes. Appellant repeatedly held himself out as a physician when marketing products and giving lectures in California. The public has an interest in the professional disciplinary history of an individual who affiliates with the practice of medicine, and the Board's disclosures further the public safety and welfare. We note that even if appellant did not work in the medical field or represent himself as a physician, there is no reason why the Board would not disclose information in its custody or control on the Internet rather than require an inquiring member of the public to search through databases of different states.

---

[4] Indeed, at one time this was the Board's disclosure policy for former license holders. But, in 2003, the Board broadened the scope of its disclosures in response to the Legislature's amendments of sections 2027 and 803.1 and what the Board's staff perceived as shortcomings in its former policy. This testimony was given by a staff person who heads the unit charged with public disclosures. This witness was impeached at trial with deposition testimony where she said the policy change was unrelated to the Legislature's amendment of the statutes.

█ A reasonable interpretation of the text of the statutes, made in consideration of their purpose, supports the Board's position. We interpret sections 803.1 and 2027 to require the Board to publish information about enforcement actions initiated while an individual is licensed to practice medicine in California, and to correct those disclosures when new information becomes available.

## DISPOSITION

The judgment is affirmed. Respondent to have its costs on appeal.

Willhite, J., and Manella, J., concurred.