Filed 7/30/13  8451 Melrose Property v. Akhtarzad CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| 8451 MELROSE PROPERTY, LLC, | B237052 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. Nos. BC414854, BC415957) |
| v. | |
| SINA AKHTARZAD, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Holly E. Kendig, Judge.  Reversed and remanded.

Benedon & Serlin, Gerald M. Serlin and Kelly R. Horwitz, for Defendant and Appellant Sina Akhtarzad.

Law Offices of Ramin Azadegan, Ramin Azadegan and Roger Furman, for Plaintiff and Respondent 8451 Melrose Property, LLC.

_____

8451 Melrose Property, LLC (Melrose) sued Sina Akhtarzad for breach of a commercial lease. Akhtarzad cross-complained and filed a separate complaint against Melrose and its manager, Jack Simantob, for breach of a lease, fraud and deceit, and rescission. Following a bench trial, the trial court entered judgment for Melrose. On appeal, Akhtarzad contends: (1) the trial court made a number of erroneous and prejudicial evidentiary rulings; (2) the trial court's damages award was not supported by the evidence and was legally improper in a number of respects; (3) the trial court was prejudicially biased against Akhtarzad's counsel; and (4) the trial court abused its discretion in denying a trial continuance after Akhtarzad fired his counsel.

While this appeal was pending, the California Supreme Court issued an opinion in *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169 (*Riverisland*), overruling long-standing precedent regarding the admissibility of parol evidence to prove fraud. Though the trial court was correct to follow then-existing case law which had been in effect for 75 years (see, e.g., *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450), we find *Riverisland* is applicable here and warrants reversal of the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

"Following the usual rules on appeal after a trial on the merits, we construe the facts in the light most favorable to the judgment." (*Fulton v. Medical Bd. of California* (2010) 183 Cal.App.4th 1510, 1513.) In March 2008, Melrose and Akhtarzad entered into a lease for a commercial retail property at 8451 Melrose Avenue. The lease was for an 11-year term, with two five-year options to extend. The tenant was to pay a fixed minimum annual rent of $660,000, with three percent increases each year. As a "triple net" lease, the tenant was also responsible for additional charges, defined as "all charges, fees and expenses and other amounts" due under the provisions of the lease, including expenses associated with the property and real estate taxes. The lease indicated Akhtarzad would use the property as a "selective, first-class retail development." The parties anticipated Akhtarzad would engage in construction or renovation at the

2

property.  The lease accordingly included a substantial section regarding the terms and conditions of the improvements to be undertaken.

In January 2009, rent for the property was due.  Akhtarzad told Simantob he could not pay the rent and had no potential subtenants for the property.  In February 2009, Melrose's attorney sent Akhtarzad a notice of abandonment.  Akhtarzad sent Melrose a check for $25,000, yet he owed around $130,000.  When Simantob asked Akhtarzad why he had sent the $25,000 check, Akhtarzad responded it was the last payment Melrose would receive, Melrose should not expect more, and Simantob should lease the property to a new tenant.

In March 2009, Simantob and Akhtarzad spoke again.  Akhtarzad said he could do nothing with the property, and Melrose could have it back.  Simantob made arrangements with Akhtarzad to retrieve the key to the property.  Simantob found the property in disarray.  The building was stripped of everything, including fixtures.  After cleaning up debris, Melrose attempted to rent the property again.  Melrose listed the property with a realtor familiar with the property and high-end tenants.  Only one potential tenant expressed interest in leasing the property, at a reduced rent, but no agreement was reached.  The property remained vacant at the time of trial.

Melrose filed suit against Akhtarzad for breach of contract.  Akhtarzad cross-complained for breach of lease, fraud, restitution and rescission, and an accounting.  Akhtarzad also filed a separate complaint alleging the same causes of action against Simantob.  In his answer to Melrose's complaint, Akhtarzad asserted an affirmative defense for fraud and misrepresentation.

The trial court conducted a bench trial on the consolidated actions.  Near the conclusion of Melrose's case, Akhtarzad dismissed his trial counsel and began representing himself.  Akhtarzad later informed the court he could not effectively represent himself.  He requested a two-week continuance to secure new counsel. The trial court denied the request.  In his own case, Akhtarzad offered testimony from two defense witnesses and examined Simantob as an adverse witness.  Akhtarzad did not testify.  After resting his case, he informed the trial court he was unavailable on the next

3

scheduled day for trial due to an emergency trip to New York. He was not present for Melrose's closing statement or the trial court's issuance of a tentative judgment. The trial court found in favor of Melrose on all claims. In a statement of decision the court concluded Akhtarzad failed to present any credible evidence to support any of his claims or defenses. It awarded Melrose $8,549,307.33, including attorney fees and costs. The damages portion of the award consisted of unpaid past and future rent, for the length of the full term of the lease, as well as unpaid past and future additional charges, late charges, and interest, as set forth in the lease.

The trial court denied Akhtarzad's motion for a new trial and a motion asking the court to retain jurisdiction to assess future damages. Akhtarzad timely appealed from the judgment in November 2011.[1]

## DISCUSSION

### I. The Trial Court Erroneously Excluded Parol Evidence Relevant to Akhtarzad's Fraud Claim

#### A. Background

Akhtarzad's cross-complaint alleged Melrose falsely represented the entire property could be used for retail sales, and concealed that a portion of the property was limited to use as a warehouse. The cross-complaint further alleged Melrose misrepresented and concealed that, in remodeling the second story portion of the property, Melrose made misrepresentations to the City of West Hollywood, thus portions of the property were added illegally. According to the cross-complaint, the property "required" 12 parking spaces, but only had six.

The cross-complaint alleged Akhtarzad intended to sublease the entire property as retail space. He allegedly relied on Melrose's representations that all of the property was zoned for retail, the entire rentable area was 10,000 square feet, and no portion of the existing structures were added illegally. According to the cross-complaint, the

---

[1] In late December 2011, Akhtarzad filed for bankruptcy, which automatically stayed this appeal. The bankruptcy stay was lifted in March 2012.

"concealment of material facts and the fraudulent misrepresentations" induced Akhtarzad to enter the lease, and caused him to suffer "economic loss and out-of-pocket expenses in an amount exceeding $25,000 . . . ."

The record does not reveal whether Akhtarzad's fraud claim was tested by demurrer or a motion for summary judgment and/or summary adjudication. However, the claim remained at issue by the time of trial. Akhtarzad attempted to question Melrose's witnesses about the warehouse portion of the property and whether that space could lawfully be used for retail. He also attempted to ask questions related to his claim that the second story of the property was added illegally. We detail the questions and trial court rulings below.

1. Cross-examination of Simantob: retail space

During cross-examination of Simantob, Akhtarzad's counsel asked whether Simantob made representations to Akhtarzad that the entire building was legal for use as retail space. Melrose's counsel objected based on the parol evidence rule and relevance. The court sustained the objection. The court explained the lease was an integrated document. The court further noted no party had ever asserted there was an ambiguity in the lease.

2. Cross-examination of Simantob: discussions about the lease

On cross-examination of Simantob, Akhtarzad's counsel asked a general question about the content of Simantob's discussions with Akhtarzad about the property, prior to the signing of the lease. Melrose's counsel asserted a parol evidence objection. The court heard argument and allowed additional briefing. Melrose contended parol evidence could not be offered to prove fraud when the fraud alleged addressed a matter covered by the terms of the written agreement. Melrose relied on two cases, *West v. Henderson* (1991) 227 Cal.App.3d 1578, and *Green v. Del-Camp Investment, Inc.* (1961) 193 Cal.App.2d 479. Melrose alleged a lease provision allowing the tenant to use the premises for any use allowed by law, and another provision requiring the tenant to procure and maintain any necessary permits, contradicted Akhtarzad's allegation that the property did not have appropriate permits for retail use. Similarly, Melrose asserted the

5

provision requiring the tenant to secure all necessary permits contradicted the allegation that the property had insufficient parking spaces.

Akhtarzad argued parol evidence could be offered to prove misrepresentations of fact, as opposed to promissory fraud. He also contended an "as-is" provision in the lease would not provide a defense to a fraudulent inducement claim. Akhtarzad asserted his claims fell within the fraud exception to the parol evidence rule set forth in Code of Civil Procedure section 1856, subdivision (g).

The trial court did not definitively rule on the issue. Instead, the court indicated it would hear the evidence before deciding whether the parol evidence rule applied. Akhtarzad's counsel did not return to the line of questioning interrupted by the parol evidence objection.

3. Cross-examination of the realtor: legal uses of the property

While cross-examining the realtor retained to re-lease the property, Akhtarzad's counsel asked whether the entire building could legally be used for retail. Melrose's counsel made relevance and parol evidence objections. Melrose argued any representations the realtor made were irrelevant because they could not be used to contradict provisions in the lease indicating it was an integrated lease, or to contradict provisions stating the landlord made no representations or warranties about the suitability of the property for the tenant's business. Akhtarzad's counsel argued parol evidence could be admitted to show fraud, and the questions to the realtor were relevant to mitigation issues. The trial court sustained Melrose's objections "on all grounds."

4. Direct examination of Simantob: the allegedly illegal addition

On direct examination, Akhtarzad asked Simantob whether the property was a one or two story building when Simantob's family purchased it in 1991. Melrose's counsel objected based on relevance. Akhtarzad responded he wished to show that before the lease was signed, Simantob misrepresented that the building had two stories when his family purchased the building. Akhtarzad explained he wished to show the second story was an illegal addition. The court responded, in part: "What you need to understand is that with respect to the fraud claim, what the *West* case and various other cases have

6

established is that I – if it is contradicted, what you're asking of the witness to testify about contradicts the terms of the written lease, it's not admissible." Melrose's counsel then argued the parol evidence rule "excludes and should exclude all evidence in connection to any purported misrepresentations."

The court subsequently told Akhtarzad: "[Y]ou cannot ask about fraudulent representations. You can ask, but I can't admit evidence about representations before the lease was signed if they conflict with the written terms of the lease." The court sustained Melrose's objection to the pending question. Akhtarzad protested he was trying to show Simantob misrepresented the facts. The court responded: "You have a fraud claim, but your fraud claim has to be on something else other than varying the terms of the written lease. The cases that everybody has cited to me make that very clear. . . . [W]hat you're trying to do is introduce testimony about representations prior to the signing of the lease, prior to the time when you signed a document that said . . . it included everything, and the law does not allow that. The case law is very clear. You can't offer these representations to vary the terms of a written lease."

In its Statement of Decision, the court stated Akhtarzad failed to present any credible evidence he was fraudulently induced to enter into the lease, or that the lease was unenforceable. In addition, "Akhtarzad did not present any substantial evidence supporting any of the alleged misrepresentations or concealments he alleged against" Melrose and Simantob. In a footnote, the court explained evidentiary problems precluded Akhtarzad from pursuing some of his allegations. Specifically, "[the] integration clause, together with the parol[] evidence rule, precluded Akhtarzad from pursuing any misrepresentation or concealment allegations that contradict matters addressed in the Lease. However, because of Akhtarzad's failure of proof in his case in chief, this evidentiary issue became secondary, since no substantial evidence was ultimately introduced by Akhtarzad."

### B.  Parol Evidence, *Pendergrass*, and *Riverisland*

As codified in Code of Civil Procedure section 1856 and Civil Code section 1625, the parol evidence rule provides "that when parties enter an integrated written agreement, extrinsic evidence may not be relied upon to alter or add to the terms of the writing." (*Riverisland, supra,* 55 Cal.4th at p. 1174, fn. omitted.)  The rule "is founded on the principle that when the parties put all the terms of their agreement in writing, the writing itself becomes the agreement.  The written terms supersede statements made during the negotiations.  Extrinsic evidence of the agreement's terms is thus *irrelevant,* and cannot be relied upon.  [Citation.]  '[T]he parol evidence rule, unlike the statute of frauds, does not merely serve an evidentiary purpose; it determines the enforceable and incontrovertible terms of an integrated written agreement.'  [Citations.]" (*Ibid.*)

However, under Code of Civil Procedure section 1856, subdivision (f): "Where the validity of the agreement is the fact in dispute, this section does not exclude evidence relevant to that issue."  Thus, evidence to prove that a contract is void or voidable for fraud is admissible.  (*Riverisland, supra,* 55 Cal.4th at pp. 1174-1175, citing 2 Witkin, Cal. Evidence (5th ed. 2012) Documentary Evidence, § 97, p. 242.)  Code of Civil Procedure section 1856, subdivision (g) explicitly provides: "This section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates . . . to establish illegality or fraud."

In 1935, the California Supreme Court narrowed the fraud exception in *Bank of America Etc. Assn. v. Pendergrass* (1935) 4 Cal.2d 258 (*Pendergrass*).  In *Pendergrass,* the court held parol evidence may only be offered to prove fraud if the evidence establishes an independent fact or representation that does not directly contradict the written terms of the contract.  (*Id.* at p. 263.)  In this case, Akhtarzad contended he would show Simantob made false representations about the property and fraudulently induced Akhtarzad to sign the lease.  The trial court excluded the purported evidence in reliance on *West v. Henderson* (1991) 227 Cal.App.3d 1578, which in turn relied on *Pendergrass*.  (*West,* at pp. 1583-1584.)  The trial court accepted Melrose's argument that a representation about whether the entire property was permitted for retail use contradicted

8

a provision of the written lease, as did any alleged representation that the second story was a legal addition to the property. And, as noted above, the trial court ultimately advised it would not admit any evidence about representations about the property, made before the lease was signed, if they conflicted with the written terms of the lease. This reasoning was generally consistent with *Pendergrass.*[2]

In January 2013, after the instant appeal was filed and Melrose had submitted its respondent's brief, the California Supreme Court overruled *Pendergrass* and its progeny in *Riverisland.*[3] (*Riverisland*, at p. 1182.)

The *Riverisland* court noted the *Pendergrass* rule had survived for over 75 years and lower courts had followed it, "albeit with varying degrees of fidelity." (*Riverisland*, at p. 1176.) Nevertheless, our high court explained the *Pendergrass* rule was criticized, both academically and by some lower courts. (*Ibid*; see e.g., *Coast Bank v. Holmes* (1971) 19 Cal.App.3d 581, 591-592 [noting significant criticism and suggesting decisions liberalizing the parol evidence rule cast doubt on the "continued vitality" of the *Pendergrass* rule].) The *Riverisland* court recognized that, in contrast to *Pendergrass,* the Restatements of contracts and torts, most treatises, and the majority of other jurisdictions agree the parol evidence rule does not bar evidence of fraud. (*Riverisland,* at pp. 1176-1177.) Lower courts in California had interpreted the *Pendergrass* rule in different ways to avoid applying it. (*Id.* at pp. 1177-1178.) A 1977 California Law Revision Commission ignored *Pendergrass* when proposing modifications to the

---

[2] The parties disagreed about whether the alleged false representations actually conflicted with any terms of the lease. In his opening brief on appeal, Akhtarzad argued the specific misrepresentations he alleged did not conflict with the general provisions of the lease Melrose identified as contradictory. Under *Riverisland*, this distinction is not relevant, therefore we do not resolve this issue.

[3] Akhtarzad addressed *Riverisland* in his reply brief. We granted Melrose's request for leave to file a supplemental brief to address *Riverisland* and its application to this case. We also allowed Akhtarzad to provide a supplemental response. In its supplemental brief, Melrose does not contend the trial court's rulings remained valid even under *Riverisland*. Instead, Melrose argues the judgment should stand because Akhtarzad has not shown prejudice, and *Riverisland* should not be applied retroactively.

statutory statement of the parol evidence rule. (*Id.* at p. 1178.) The *Riverisland* court further acknowledged the *Pendergrass* rule was inconsistent with the governing statute and California law at the time *Pendergrass* was decided. (*Id.* at pp. 1179-1182.) Cases prior to *Pendergrass* "routinely stated without qualification that parol evidence was admissible to prove fraud," without conditions. (*Id.* at pp. 1180-1181.)

Ultimately, the *Riverisland* court determined *Pendergrass* was an "aberration," inconsistent with the statute and settled case law. The court thus overruled *Pendergrass* and its progeny, and "reaffirm[ed] the venerable maxim: . . . '[I]t was never intended that the parol evidence rule should be used as a shield to prevent the proof of fraud.'" (*Riverisland,* at p. 1182.)

## C. Application

The parol evidence rule is one of substantive law, although it results in the exclusion of evidence. (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 343.) Thus, while evidentiary rulings are generally reviewed for an abuse of discretion, we review the trial court's application of the parol evidence rule de novo. (*Wagner v. Glendale Adventist Medical Center* (1989) 216 Cal.App.3d 1379, 1386.)

It is undisputed that Akhtarzad attempted to offer extrinsic evidence to prove fraud or fraudulent inducement. The trial court did not allow him to present evidence regarding Melrose's alleged false representations about the property on the ground that they would constitute impermissible parol evidence: extrinsic evidence contradicting one or more provisions of the written lease. In light of *Riverisland*, we must conclude that this change in the law makes the court's evidentiary rulings based on parol evidence inconsistent with Code of Civil Procedure section 1856, subdivisions (f) and (g), and therefore erroneous.

## D. Prejudice

Our analysis does not end with the above conclusion. Under Evidence Code section 354, a judgment may not be reversed because of the erroneous exclusion of evidence unless the reviewing court determines the error resulted in a miscarriage of justice. The appellant must show it is reasonably probable a more favorable result would have been reached if the challenged evidence had been admitted. (*Bowman v. Wyatt*

10

(2010) 186 Cal.App.4th 286, 327; *Karlsson v. Ford Motor Co.* (2006) 140 Cal.App.4th 1202, 1223.)

Under the circumstances of this case, we find reversal warranted. Akhtarzad was barred from eliciting any testimony regarding Simantob's representations about the property prior to the signing of the lease, both on cross-examination, and in Akhtarzad's case in chief. This completely prevented Akhtarzad from proving his claim of fraud, either as an affirmative claim, or as a defense to Melrose's breach of contract claim. (*Filet Menu, Inc. v. C.C.L. & G., Inc.* (2000) 79 Cal.App.4th 852, 861-862.) Courts have held that when a party is not allowed to present any evidence relating to a claim, the error is reversible per se "because it deprives the party offering the evidence of a fair hearing and of the opportunity to show actual prejudice." (*Gordon v. Nissan Motor Co., Ltd.* (2009) 170 Cal.App.4th 1103, 1114 (*Gordon*), collecting cases; *Southern Pacific Transportation Co. v. Santa Fe Pacific Pipelines, Inc.* (1999) 74 Cal.App.4th 1232, 1246, 1248 [erroneous exclusion of extrinsic evidence and all expert reports was prejudicial]; see also *People v. Nigri* (1965) 232 Cal.App.2d 348, 350-351 [evidence excluded based on law that changed after case was tried; appropriate remedy was reversal to allow for new trial].)

Melrose contends Akhtarzad cannot establish prejudice because other factors determined the adverse judgment, including his decision to fire his counsel, his failure to present evidence regarding his knowledge of the permitted uses of the property, and his failure to prove he relied on Melrose's alleged misrepresentations. We disagree. Akhtarzad's firing of his counsel did not, as a legal matter, affect the viability of any of the claims asserted at trial. Even without counsel, Akhtarzad attempted to put on his own case. But, near the beginning of his presentation of evidence, the trial court explicitly ruled it would not admit any evidence of fraudulent misrepresentations that conflicted with the terms of the lease. This made it impossible for Akhtarzad to prove the very first

11

element of a fraud claim – that Melrose made misrepresentations.[4]  As a result, evidence concerning the other elements of fraud, including reliance and harm, was irrelevant. Any attempt to offer evidence proving the other elements of the fraud claim would have been futile.  (Evid. Code, § 354, subd. (b); *Gordon, supra,* 170 Cal.App.4th at p. 1113.)

We conclude the exclusion of parol evidence relevant to Akhtarzad's fraud claim was prejudicial error.  (See *Riverisland, supra,* 55 Cal.4th at p. 1183 [in summary judgment context, declining to consider reliance element of fraud in the first instance].)

### E.  Retroactivity

We also reject Melrose's contention that *Riverisland* should not be applied retroactively.[5]  "As a general rule, judicial decisions are given retroactive effect, even if they represent a clear change in the law."  (*Godinez, supra,* 132 Cal.App.4th at p. 91.) And, " '[a]ppellate decisions in *civil* cases are almost *always given retroactive* effect and applied to all pending litigation.  [Citations.]' "  (*Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 660 (*Abramson*).)  However, courts have limited retroactive application of a decision "when 'considerations of fairness and public policy are so compelling in a particular case that, on balance, they outweigh the considerations that underlie the basic rule.'  [Citations.]"  (*Penn v. Prestige Stations, Inc.* (2000) 83 Cal.App.4th 336, 341.)  "Considerations of fairness take into account the factors of

---

[4]      " 'The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'  [Citations.]"  (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)

[5]      The *Riverisland* court did not directly address whether the decision should have retroactive application.  In that case, the trial court followed *Pendergrass* and excluded evidence of fraud in a motion for summary judgment.  The Court of Appeal reversed the trial court ruling, based on a "promissory fraud exception" to *Pendergrass*.  The Supreme Court rejected the Court of Appeal reasoning, but affirmed the Court of Appeal judgment, which reversed the order granting summary judgment.  As a result, the change effected by *Riverisland* was applied retroactively in that case.  (*Godinez v. Schwarzenegger* (2005) 132 Cal.App.4th 73, 91.)

12

foreseeability and reliance, while public policy considerations include the purpose to be served by the new rule and the effect on the administration of justice of retroactive application." (*Ibid.*)

The first inquiry is whether applying *Riverisland* would be unfair because its holding was unforeseeable to the parties. Lower courts acknowledged the *Pendergrass* rule was the law, but many also recognized the rule had been questioned. (*Wang v. Massey Chevrolet* (2002) 97 Cal.App.4th 856, 872-873; *Banco Do Brasil, S.A. v. Latian, Inc.* (1991) 234 Cal.App.3d 973, 1010.) As our high court noted in *Riverisland*, *Pendergrass* was criticized, and several courts developed "detours" to avoid applying the rule. Akhtarzad in fact attempted to rely on what the *Riverisland* court described as the "most well-developed detour," a distinction between false promises at variance with the terms of a contract, and misrepresentations of fact about the contents of the document. (*Riverisland, supra,* 55 Cal.4th at p. 1178, fn. 7.) Indeed, one of the *Riverisland* court's criticisms of *Pendergrass* was that it had "led to instability in the law, as courts have strained to avoid abuses of the parol evidence rule." (*Id.* at p. 1182.) The Supreme Court had not addressed the issue since *Pendergrass,* in 1935. (*Id.* at p. 1176.) The lower courts' efforts to carve out exceptions to the *Pendergrass* rule arguably raised questions as to the continuing vitality of the rule, and whether absolute reliance on the rule was warranted. (*Douglas v. Ostermeier* (1991) 1 Cal.App.4th 729, 745 (*Douglas*).)

As to fairness, applying *Riverisland* retroactively will not jeopardize any party's legal rights in this case. (*In re Retirement Cases* (2003) 110 Cal.App.4th 426, 456.) "[W]here a . . . statute has received a given construction by a court of last resort, and contracts have been made or property rights acquired in accordance with the prior decision, neither will the contracts be invalidated nor will vested rights be impaired by applying the new rule retroactively. [Citation.]" (*Peterson v. Superior Court* (1982) 31 Cal.3d 147, 152; *Kreisher v. Mobil Oil Corp.* (1988) 198 Cal.App.3d 389, 395 (*Kreisher*).) But here, Melrose's reliance on *Pendergrass* and its progeny was related solely to litigation strategies and arguments at trial, not the conduct underlying the litigation. Similarly, applying the clarified parol evidence rule retroactively in this case

13

will not deprive Melrose of any remedy. (*Grafton Partners v. Superior Court* (2005) 36 Cal.4th 944, 967*; Newman v. Emerson Radio Corp.* (1989) 48 Cal.3d 973, 990-991 (*Newman*); *Douglas, supra,* 1 Cal.App.4th at p. 743.)

We find untenable Melrose's argument that under *Pendergrass* it had a vested right to be immune from claims of fraud in connection with the lease. Melrose's position has been that it never engaged in any fraudulent conduct. It has not argued its conduct prior to the signing of the lease was the result of its reliance on the rule that fraud could not be established with the use of parol evidence if the alleged misrepresentations conflicted with the terms of the written lease. (*Sierra Club v. San Joaquin Local Agency Formation Com.* (1999) 21 Cal.4th 489, 509 [no issue of substantial detrimental reliance where no one acquired vested right or entered into a contract based on the existence of the rule being overturned].)

This case is thus fundamentally different from *Kreisher*, in which the defendant had an express contractual right, the defendant acted in reliance on that right and consistent with current law, the plaintiff sued for breach of contract, and only after a trial did the Supreme Court invalidate the law upon which the defendant had relied. (*Kreisher, supra,* 198 Cal.App.3d at pp. 395-397.) The *Kreisher* court determined the change in law should not be applied retroactively. It concluded it would be unfair to penalize the defendant for "its nonconformity with standards which took effect only after it conscientiously determined the state of the law and relied upon it in reasonable good faith[.]" (*Id.* at p. 404.) In contrast, Melrose cannot point to any similar substantial detrimental reliance on its part.[6] (See *Newman, supra,* 48 Cal.3d at pp. 982-983

---

[6]    *Claxton v. Waters* (2004) 34 Cal.4th 367, is similarly inapposite. *Claxton* concerned mandatory preprinted compromise and release forms in workers' compensation claims, and a rule regarding the admissibility of extrinsic evidence to prove whether the parties intended to release claims outside the workers' compensation system. (*Id.* at p. 371, 376-377.) The court concluded such extrinsic evidence is not admissible. The court then determined its holding should only be applied prospectively because the rule being changed was "one that parties in [that case] and other cases may have relied on in settling claims. In particular, employers may have refrained from proposing and

14

[California courts consistently apply tort decisions retroactively, even when they expand scope of existing torts in ways defendants could not have anticipated].)

"It is the general rule that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation and that the effect is not that the former decision was bad law but that it never was the law." (*County of Los Angeles v. Faus* (1957) 48 Cal.2d 672, 680-681.) "Judicial decisions do not establish a new rule of law for purposes of exclusion from the rule of retroactivity when the court ' "gave effect to a statutory rule that the courts had theretofore misconstrued . . . ." ' " (*In re Retirement Cases, supra,* 110 Cal.App.4th at pp. 452-453.) We also note another recent appellate case has applied *Riverisland* retroactively to conclude a trial court properly admitted parol evidence to prove fraud. (*Julius Castle Restaurant Inc. v. Payne* (2013) 216 Cal.App.4th 1423, 1440-1442; *Abramson, supra,* 115 Cal.App.4th at p. 661.) We see no reason to depart from the general rule of retroactivity in this case.

### F. No Remand to a Different Trial Judge

In light of our conclusions above, we need not consider Akhtarzad's remaining arguments regarding other evidentiary rulings, the award of damages, or other asserted trial court error. However, in connection with his argument that the trial court exhibited prejudicial judicial bias, Akhtarzad requests that we remand this case to a different trial judge. We do not address Akhtarzad's argument that judicial bias requires reversal of the judgment. We find it appropriate to say, however, our review of the entire record finds nothing to suggest the trial judge is biased against Akhtarzad.

---

executing separate documents expressly releasing claims outside the workers' compensation system because they were confident they could prove by extrinsic evidence a mutual intent to release such claims. Our holding barring the admission of extrinsic evidence for this purpose has a substantive effect because it may, in individual cases, effectively alter the legal consequences of executing the standard compromise and release form." (*Id.* at p. 379.) Melrose cannot identify any similar reliance, or substantive effect, in this case.

15

Nevertheless, because we reverse on other grounds and remand, we consider whether we should exercise our discretion under Code of Civil Procedure section 170.1, subdivision (c), to remand to a different trial judge. Our discretion to disqualify a judge under Code of Civil Procedure section 170.1, subdivision (c) is to be exercised sparingly, and only when the interests of justice require it. (*Hernandez v. Superior Court* (2003) 112 Cal.App.4th 285, 303.) We will not exercise it here. While the judge's interactions with one of Akhtarzad's attorneys were often contentious, they do not suggest bias. (*Germ v. City & County of San Francisco* (1950) 99 Cal.App.2d 404, 415-416.) It is clear from the record that Akhtarzad's counsel frequently interrupted and engaged in combative colloquies with the court. But strained relations between a judge and counsel are not evidence of bias. (*Roitz v. Coldwell Banker Residential Brokerage Co.* (1998) 62 Cal.App.4th 716, 724.)

## DISPOSITION

The judgment is vacated and the matter remanded for a new trial. The parties are to bear their own costs.


                                                    BIGELOW, P. J.

We concur:



            FLIER, J.



            GRIMES, J.

16