[No. B195050. Second Dist., Div. Three. Jan. 29, 2009.]

SCOTT GORDON, Plaintiff and Appellant, v.
NISSAN MOTOR CO., LTD., Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

_____

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part 2. of the Discussion portion of the opinion.

1104

COUNSEL

Coben & Associates, Larry E. Coben; Law Offices of Michael S. Fields, Inc., Michael S. Fields; Esner, Chang & Ellis, Stuart B. Esner, Andrew N. Chang, Holly Boyer; Law Offices of Nate G. Kraut and Nate G. Kraut for Plaintiff and Appellant.

Bowman and Brooke, Mark V. Berry, H. Franklin Hostetler III, Scott J. Stockdale and Jenny A. Covington for Defendant and Respondent.

OPINION

KITCHING, J.—

## INTRODUCTION

Plaintiff and appellant Scott Gordon sustained severe injuries when a Nissan Pathfinder he was driving rolled over. Gordon claims that the manufacturer of the vehicle, defendant and respondent Nissan Motor Co., Ltd., is liable for his injuries because the vehicle was defectively unstable. He also claims that the Pathfinder's roof was defective because it was not crashworthy, that is, it was not adequately designed to withstand a rollover.

The case was tried twice in the superior court. The first trial resulted in a mistrial. The second trial, which is the subject of this appeal, resulted in a verdict in Nissan's favor. Gordon elected not to pursue his roof defect claim at the first trial. Prior to the second trial, however, Gordon designated expert witnesses to testify about matters relating to that claim. By granting Nissan's motion to strike portions of Gordon's expert witness disclosure statement relating to the alleged defects in the design of the Pathfinder roof, the trial court effectively barred Gordon from presenting evidence on the issue.

The order granting Nissan's motion to strike was reversible error. Gordon should have been given an opportunity to present evidence regarding his roof defect claim. Further, in the unpublished portion of this opinion, we find that the superior court erroneously refused to give a jury instruction offered by Gordon relating to his instability claim. We thus reverse the judgment and remand the case to the superior court with directions to conduct a new trial on both of Gordon's claims.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Accident*

In the afternoon of June 14, 2003, Gordon was driving a 1990 Nissan Pathfinder accompanied by his friend Michael Slotnick. Gordon and Slotnick were traveling from Colorado to California. After stopping at a gas station, Gordon began driving on an on-ramp to Interstate Highway 15 in Nevada. Slotnick asked Gordon to check whether the rear driver's side window was closed. When Gordon turned to do so, he lost sight of the road and allowed the vehicle to veer partially onto the left shoulder of the road. Gordon turned the vehicle to the right, then, in order to avoid going off the right side of the road, turned the vehicle to the left again. The vehicle began to spin, then it rolled over. Gordon was not wearing his seatbelt. As a result of the accident, Gordon sustained spinal injuries and was rendered a paraplegic.

The parties and their respective experts dispute many facts relating to the accident. Nissan contends Gordon's vehicle was traveling 40 to 48 miles per hour when Gordon veered onto the left shoulder, and 20 to 24 miles per hour at the time of the rollover. Gordon claims that he was driving 29 to 39 miles per hour when the vehicle first left marks on the pavement and 18 miles per hour when the vehicle started to roll over. Nissan contends that when Gordon turned the vehicle to the left the second time, the vehicle began to travel sideways, then the right rear wheel dug into the asphalt, deeply gouging the pavement and causing the vehicle to roll over two times. Although Gordon concedes that the vehicle started sliding sideways when he made his second left turn, he contends that the right rear wheel only gouged into the pavement as it was rolling over, and that the vehicle only rolled over once.

### 2. *The Allegations in Gordon's Complaint*

In January 2004, Gordon commenced a lawsuit against Nissan for strict product liability and other causes of action.[1] Gordon's complaint alleged that the Pathfinder he was driving at the time of the accident was defectively designed because of its propensity to roll over. Gordon's complaint further alleged that the vehicle was defectively designed because its roof and other features did not adequately protect occupants in the event of a collision.

### 3. *Gordon's Election Not to Pursue His Roof Defect Claim*

Prior to the first trial, Gordon elected not to pursue his defective roof claim but instead to pursue only his vehicle stability claim. Nissan has characterized

---

[1] The other causes of action were not pursued at trial and are not at issue on appeal.

this election as an "admission" that Gordon's roof defect claim was meritless, and a "waiver" by Gordon of his right to pursue the claim. Because the heart of this dispute arises from the scope and effect of Gordon's election, we will state in detail the way it occurred.

### A. The Deposition

At a deposition of one of Gordon's expert witnesses, the following colloquy took place between Nissan's counsel, Mark Berry, and Gordon's former counsel, Daniel Dell'Osso:

"MR. BERRY: Before we go off the record, Mr. Dell'Osso, we spoke at a break about this scenario. It appears to me that I have experts that I don't need.

"MR. DELL'OSSO: Yes. The issue is whether you need experts to address the issue of roof crush and restraint performance; and as you know, having now completed all of plaintiff's experts, nobody's offering any opinions about roof performance or restraint performance other than, you know, [Gordon's expert, Carley C. Ward, Ph.D.] describing how the roof comes down to cause injury, so . . . .

"MR. BERRY: Well, an alternative scenario.

"MR. DELL'OSSO: Right, right. Exactly. But that has not been articulated necessarily as an issue with the roof per se. So I think we agreed that I have no problem with you withdrawing your experts who were going to talk about roof crush and restraint.

"MR. BERRY: And those would be Mr. Cooper and Mr. Gratzinger; and based on our discussion and your comments just now, my intention would be to go ahead and withdraw them so that you don't need to depose them. I think we're through.

"MR. DELL'OSSO: Okay."

### B. The Motion in Limine

The second alleged admission by Gordon took place at a hearing on one of Nissan's motions in limine. Gordon took the position that his injuries could have been more severe had he been wearing a seatbelt during the accident. His expert, Dr. Ward, conceded that Gordon would not have sustained the injuries he received had he been wearing a seatbelt. Dr. Ward further opined, however, that when a passenger wears a seatbelt during a rollover accident,

there is a greater risk of a cervical injury.[2] Nissan argued that Gordon's injuries were more severe because he was *not* wearing a seatbelt. In its motion, Nissan sought to preclude evidence allegedly supporting Gordon's position on this issue. At the hearing on the motion, the following exchange took place between the court and Gordon's counsel:

"THE COURT: . . . [My] inclination is to deny the motion and let the evidence come in as to the opinions of what would have happened by way of injuries. . . . [¶] . . . [¶]

"THE COURT: . . . I am concerned about this other issue of crash worthiness. I am not suggesting that I'm approving that [evidence regarding crash worthiness] be introduced. But I understood from the opposition, Mr. Dell'Osso, that that was not your intention. It was simply to show that because the roof crashed in the way it did and that's established, then the injury would have been worse if he had his seat belt on. And I think you're entitled to do that.

"MR. DEL'OSSO: That's correct, Your Honor. We're not going to attack the roof in this case.

"THE COURT: You're not going to attack the roof?

"MR. DEL'OSSO: Sometimes we do in these cases. But it's not one in which we'll do that.

"THE COURT: Okay. So [the motion is] denied."

### 4. *The First Trial*

In May 2005, the first trial commenced. Gordon apparently did not make any arguments or present any expert testimony regarding the alleged defects in the roof design of the Pathfinder. In June 2005, after the jury became hopelessly deadlocked, the court declared a mistrial.

### 5. *Gordon's Designation of Experts Regarding His Roof Defect Claim*

The superior court then ordered that a second trial commence on February 14, 2006. Pursuant to an agreement between counsel for both sides, the parties exchanged supplemental expert disclosures on December 5, 2005.

---

[2] Dr. Ward also testified at her deposition that Gordon moved "towards the roof," and that he received his injuries from his body's movement into the roof and ground. This testimony, Nissan claims, caused Gordon to abandon his roof defect claim.

Gordon's supplemental expert disclosure statement listed five expert witnesses—Robert J. Caldwell, P.E., Mariusz Ziejewski, Ph.D., Daniel Thomas, M.D., Shane Richardson, and Brian Herbst—who would testify regarding topics relating to Gordon's roof defect theory. On December 19, 2005, Nissan identified Robert Gratzinger as an expert to address roof crush and crashworthiness issues. Both parties had an opportunity to depose expert witnesses identified or reidentified for purposes of the second trial.

### 6. *Nissan's Motion to Strike*

On December 16, 2005, Nissan filed a motion to strike portions of Gordon's supplemental expert witness disclosure statement referring to "roof performance." Nissan argued that Gordon waived his roof defect claim and was judicially and equitably estopped from asserting it. On January 13, 2006, the court granted the motion. Nissan prepared a notice of the ruling, wherein it stated that the court's order granting its motion "precluded Gordon from introducing evidence on a theory that his injuries were caused by a defective design or unsafe condition of the roof of the subject vehicle."

### 7. *The Second Trial*

The second trial was postponed to September 5, 2006. After a two-week trial, the jury returned a verdict in favor of Nissan and against Gordon, and the court entered judgment thereon. Gordon filed a timely notice of appeal.

## CONTENTIONS

Gordon contends that the superior court erroneously granted Nissan's motion to strike, thereby precluding Gordon from pursuing his roof defect theory. He further contends that the court erred by declining to give jury instructions relating to the so-called consumer expectation theory in products liability cases. Finally, Gordon argues that the judgment should be reversed because a series of evidentiary rulings by the court deprived him of a fair trial. We address the first argument in the published portion of our opinion and the second argument in the unpublished portion. Because we grant Gordon a new trial based on his first two arguments, we do not reach his third argument.

## DISCUSSION

### 1. *The Granting of Nissan's Motion to Strike Was Reversible Error*

### A. *Standard of Review*

Nissan brought its motion to strike on the ground that the court had the "inherent power" to strike portions of Gordon's expert witness disclosure

statement. The granting of the motion, as discussed below, had the effect of precluding Gordon from introducing evidence relating to his roof defect claim. The standard of review of any ruling by a trial court on the admissibility of evidence is abuse of discretion. (*City of Ripon v. Sweetin* (2002) 100 Cal.App.4th 887, 900 [122 Cal.Rptr.2d 802].) We will review the trial court's granting of Nissan's motion to strike under that standard.

B.  *The Superior Court Abused Its Discretion in Granting Nissan's Motion to Strike*

■  The effect of an order granting a new trial is to leave the case at large and to place the parties in the same position as if the case had never been tried. (*Saakyan v. Modern Auto, Inc.* (2002) 103 Cal.App.4th 383, 390 [126 Cal.Rptr.2d 674]; *Guzman v. Superior Court* (1993) 19 Cal.App.4th 705, 707 [23 Cal.Rptr.2d 585] (*Guzman*); *Sichterman v. R. M. Hollingshead Co.* (1931) 117 Cal.App. 504, 506 [4 P.2d 181] (*Sichterman*).) The parties are entitled to introduce additional or new evidence not introduced at the earlier trial. (*Guzman*, at p. 707; *Sichterman*, at p. 506.)

In *Guzman*, the court granted the defendant's motion for a new trial on the ground that there was insufficient evidence to support the plaintiff's damages. The court found that no expert witness linked the plaintiff's initial arm injury to his subsequent thumb injury. Prior to the second trial, the plaintiff moved to augment his expert witness list to include expert witnesses to testify regarding that issue. The trial court denied the motion even though the defendant had ample time to depose the plaintiff's new expert witnesses. The Court of Appeal reversed, holding that it was an abuse of discretion for the trial court to deny the plaintiff's motion. (*Guzman, supra*, 19 Cal.App.4th at p. 708.)

In *Sichterman*, the plaintiff claimed that he was injured as a result of the defendant's negligent operation of an automobile. In the first trial, the plaintiff stated that he did not have knowledge of the speed at which the defendant was driving. The jury returned a verdict in the plaintiff's favor but the judgment rendered thereon was reversed on the ground that the evidence failed to show negligence on the part of the defendant. In the second trial, the plaintiff testified that the defendant was driving at an excessive speed. The defendant objected to this testimony on the ground that it was false and fabricated. The Court of Appeal, however, held that the new evidence and factual claim by the plaintiff was permitted in a new trial. The defendant had an opportunity to impeach the plaintiff with his prior testimony; it was up to the jury to decide whether the plaintiff was telling the truth. (*Sichterman, supra*, 117 Cal.App. at pp. 505–506.)

In *Atchison etc. Ry. Co. v. Superior Court* (1939) 12 Cal.2d 549 [86 P.2d 85] (*Atchison*), the plaintiff asserted causes of action based on a federal statute and common law negligence. During the first trial, the plaintiff "abandoned" his negligence claim. (*Id.* at p. 552.) The jury returned a verdict in the plaintiff's favor with respect to his federal statutory claim. The United States Supreme Court, however, reversed the judgment, holding that as a matter of law there was no violation of the federal statute. (*Id.* at p. 553.)

After the trial court ordered a new trial, the defendant petitioned for a writ of prohibition seeking to prevent a second trial. (*Atchison, supra*, 12 Cal.2d at p. 550.) The California Supreme Court, however, denied the petition. (*Id.* at p. 557.) In reaching its decision, the court noted that the "effect in general of a reversal [of a judgment] is to set the case at large as if it had never been tried." (*Id.* at p. 555.) The court also recognized that the law favors deciding cases on their merits, and that when a party misconceives his remedy in a first trial, he is not in general precluded from availing himself of the proper remedy in a second trial. (*Ibid.*) The plaintiff therefore was not prohibited from pursuing, in the second trial, the common law negligence claim which the plaintiff had abandoned during the first trial. (*Id.* at p. 557.)

■ Under these principles, the trial court in this case abused its discretion in granting Nissan's motion to strike. Gordon was entitled to present new expert witness testimony regarding his roof defect claim in the second trial (*Guzman, supra*, 19 Cal.App.4th at p. 707), even though he had abandoned the claim prior to the first trial (*Atchison, supra*, 12 Cal.2d at pp. 552, 557), and even if the factual basis of his new claim arguably contradicted the facts presented in the first trial (*Sichterman, supra*, 117 Cal.App. at pp. 505–506). No exceptional circumstances existed that would justify depriving Gordon of an opportunity to present his roof defect claim to the jury. Gordon's complaint set forth the claim, thereby giving Nissan fair notice of the claim and ample opportunity to conduct discovery on the claim prior to the first trial.[3] Nissan also had an opportunity to depose all of Gordon's expert witnesses regarding the claim before the second trial.

■ Nissan argues that as a result of Gordon's lawyer's statements prior to the first trial, Gordon "judicially admitted that the roof of the Pathfinder was not a cause of his injuries." Although statements of counsel "may be treated as judicial admissions if they were intended to be such or reasonably construed by the court or the other party as such," such admissions must be clear and unambiguous. (*People v. Jackson* (2005) 129 Cal.App.4th 129, 161 [28 Cal.Rptr.3d 136]; see also *Zelayeta v. Pacific Greyhound Lines* (1951) 104 Cal.App.2d 716, 734 [232 P.2d 572].) In this case, the statements of Gordon's

---

[3] Gordon withdrew his roof defect claim at a deposition six days prior to the deadline to conduct discovery.

counsel, when read in context, simply amounted to an election not to pursue his roof defect claim in the first trial. This election was not the same thing as an admission that the claim lacked merit or an admission that the cause of Gordon's injuries was unrelated to the alleged roof defect. Parties often choose not to assert a claim or defense for tactical reasons unrelated to the merits of the claim or the defense. We do not believe that such a tactical choice should bind the plaintiff on retrial.

Next, Nissan argues that Gordon waived his right to pursue his roof defect claim. That was true with respect to the first trial but was not true with the respect to the second. Like the plaintiff in *Atchison*, Gordon had a right to pursue his roof defect claim in the second trial even though he had abandoned that claim prior to the first trial.

■ Finally, Nissan argues that Gordon was judicially and equitably estopped from pursuing his roof defect claim. The doctrine of judicial estoppel, however, only bars a party from taking two totally inconsistent *positions* in the course of judicial proceedings. (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183 [70 Cal.Rptr.2d 96] (*Jackson*).) Likewise, " '[a] party may invoke equitable estoppel to prevent his opponent from changing positions if . . . he detrimentally relied upon his opponent's prior position . . . .' "[4] (60 Cal.App.4th at p. 183.) Here, Gordon did not take a "position" with respect to his roof defect claim during or prior to the first trial. Rather, he simply elected not to pursue the claim. Gordon therefore was not judicially or equitably estopped from pursuing the claim in the second trial.

### C. *Gordon Made a Sufficient Offer of Proof*

■ A judgment cannot be set aside on the ground that the court erroneously excluded evidence unless the substance, purpose and relevance of the excluded evidence were made known to the court by an offer of proof or by other means. (Evid. Code, § 354, subd. (a).) Nissan argues that the judgment here cannot be reversed even if the trial court's granting of the motion to strike was error, because Gordon made an inadequate offer of proof or no offer of proof regarding his roof defect claim. An offer of proof is a statement by counsel describing proposed evidence and what he or she intends to prove if such evidence is admitted. (See 3 Witkin, Cal. Evidence (4th ed. 2000) Presentation at Trial, §§ 401, 402.)

---

[4] Judicial and equitable estoppel have other requirements as well. (*Jackson, supra,* 60 Cal.App.4th at p. 183.) While judicial estoppel focuses on the relationship between the litigant and the judicial system, and is designed to protect the integrity of the judicial process, equitable estoppel focuses on the relationship between the parties, and is designed to protect litigants from injury caused by less than scrupulous opponents. (*Ibid.*)

Here, Gordon's counsel made a sufficient offer of proof. Gordon's supplemental expert witness disclosure statement provided the names and addresses of the expert witnesses and a brief summary of their qualifications and proposed testimony. Gordon's opposition to Nissan's motion to strike stated: "The plaintiff's newly identified experts have opined, *inter alia*, that the Pathfinder is not crashworthy, that its roof structure is not sufficiently strong to prevent collapse in this foreseeable rollover, and that the collapse caused the crushing of Mr. Gordon's lower thoracic spine, resulting in his paraplegia." The opposition further stated: ". . . the plaintiff plans to prove that his paralysis resulted because the roof structure of the Pathfinder was **not** designed to safely manage the forces imposed during this rollover. Instead the roof caved in and Mr. Gordon's lower thoracic spine was crushed."

The statements made by Gordon's counsel gave the court sufficient notice of the substance, purpose and relevance of the proposed expert witness testimony for the court to understand the impact of its ruling on Nissan's motion to strike. Nissan's argument that Gordon gave no offer of proof or an insufficient offer of proof is meritless.

### D. *The Superior Court's Erroneous Order Is Reversible Per Se*

■ "A judgment may not be reversed on appeal, . . . unless 'after an examination of the entire cause, including the evidence,' it appears the error caused a 'miscarriage of justice.' (Cal. Const., art. VI, § 13.) When the error is one of state law only, it generally does not warrant reversal unless there is a reasonable probability that in the absence of the error, a result more favorable to the appealing party would have been reached. (*People* v. *Watson* (1956) 46 Cal.2d 818, 835 [299 P.2d 243].)" (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574 [34 Cal.Rptr.2d 607, 882 P.2d 298].) However, when a trial court erroneously denies *all* evidence relating to a claim, or *essential* expert testimony without which a claim cannot be proven, the error is reversible per se because it deprives the party offering the evidence of a fair hearing and of the opportunity to show actual prejudice. (See *Kelly v. New West Federal Savings* (1996) 49 Cal.App.4th 659, 677 [56 Cal.Rptr.2d 803] (*Kelly*); *Brown v. Colm* (1974) 11 Cal.3d 639, 647 [114 Cal.Rptr. 128, 522 P.2d 688] (*Brown*); *In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281, 293–294 [77 Cal.Rptr.3d 305] [trial court's termination of trial rendered an assessment of prejudice impossible]; *Adoption of Baby Girl B.* (1999) 74 Cal.App.4th 43, 55 [87 Cal.Rptr.2d 569] ["Even under the state law standard of prejudice (Cal. Const., art. VI, § 13), the erroneous denial of a hearing is reversible per se."]; *Southern Pacific Transportation Co. v. Santa Fe Pacific Pipelines, Inc.* (1999) 74 Cal.App.4th 1232, 1246 [88 Cal.Rptr.2d 777] [prejudice presumed because Court of Appeal would not engage in speculation as to what trial court might have concluded had evidence been admitted];

*Webber v. Webber* (1948) 33 Cal.2d 153, 161–162 [199 P.2d 934] ["There is no need here to speculate on whether or not the result would have been the same had all the relevant evidence on the support issue received the trial judge's full and impartial consideration, and the matter been decided in the exercise of his discretion."].)

The erroneous denial of some but not all evidence relating to a claim (see, e.g., *Zhou v. Unisource Worldwide* (2007) 157 Cal.App.4th 1471, 1480 [69 Cal.Rptr.3d 273] (*Zhou*); *Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422 [77 Cal.Rptr.2d 574] (*Tudor*)) differs from the erroneous denial of all evidence relating to a claim, or essential expert testimony without which a claim cannot be proven (see, e.g., *Kelly, supra,* 49 Cal.App.4th at p. 677; *Brown, supra,* 11 Cal.3d at p. 647). In the former situation, the appellant must show actual prejudice; in the latter situation, the error is reversible per se.

In *Kelly,* the plaintiff was injured after walking out of an elevator in the defendant's building that allegedly misleveled, that is, stopped some distance above the level of the floor where the plaintiff wished to exit. There were two elevators in the defendant's building: a small elevator and a large elevator. The plaintiff testified at her deposition that she walked out of the small elevator when she was injured. After additional discovery showed that the large elevator was misleveling, the plaintiff changed her position and stated that she was in fact in the large elevator. (*Kelly, supra,* 49 Cal.App.4th at pp. 664–666.)

The trial court granted motions in limine that precluded evidence of the plaintiff stepping out of the large elevator and testimony by the plaintiff's expert witness regarding the large elevator. (*Kelly, supra,* 49 Cal.App.4th at pp. 667–668.)[5] The Court of Appeal held that the trial court's granting of the motions in limine was error "reversible per se." (49 Cal.App.4th at p. 677.) The effect of granting the motions, the court reasoned, was to prevent the plaintiff from offering evidence to establish her case and to deny her a fair hearing. (*Ibid.*)

In *Brown,* the plaintiff filed a medical malpractice case alleging that the defendant negligently performed surgery upon her in 1949. The trial court erroneously refused to permit the plaintiff's expert witness to testify as to the standard of care prevailing in 1949, on the ground that the witness was not personally acquainted with the medical standards of that year since he was not admitted to practice until several years later. Our Supreme Court held that "the exclusion of the sole expert relied upon by a party because of an

---

[5] The trial court subsequently granted a nonsuit. (*Kelly, supra,* 49 Cal.App.4th at p. 669.)

erroneous view of his qualifications is, in a case where expert testimony is essential, an abuse of discretion as a matter of law requiring reversal." (*Brown, supra,* 11 Cal.3d at p. 647.)

In *Zhou,* the plaintiff brought a personal injury action arising out of an automobile accident. The trial court granted the plaintiff's motion to exclude two letters he wrote to an insurance company regarding a second accident, wherein he acknowledged the second accident increased his pain by some degree. The Court of Appeal affirmed the judgment in favor of the plaintiff even though the trial court erred in excluding the letters. The court reasoned that only the letters, not all evidence relating to the second accident, were excluded. (*Zhou, supra,* 157 Cal.App.4th at p. 1480.) In fact, the plaintiff admitted at trial that the second accident increased his pain by some degree. (*Ibid.*) It was not reasonably probable, therefore, that the defendants would have achieved a more favorable result in the absence of the erroneous exclusion of the letters. (*Id.* at p. 1472.) The error thus was not prejudicial. (*Id.* at p. 1480.)

In *Tudor,* the plaintiff claimed that the defendant, its workers' compensation insurance carrier, established excessive reserves and otherwise mismanaged the plaintiff's claims files, so that the defendant would receive higher premiums from, and pay lower dividends to, the plaintiff. (*Tudor, supra,* 65 Cal.App.4th at p. 1426.) On appeal from a judgment for the defendant, the plaintiff cited *Kelly* and argued that the lower court's rulings on the defendant's motions in limine were reversible error per se. (*Id.* at p. 1432.) The court, however, held that *Kelly* was distinguishable for a number of reasons. Of relevance here, the court noted that in contrast to *Kelly,* "none of the challenged rulings in this case foreclosed [the plaintiff's] essential theory of liability." (*Ibid.*)

The present case is analogous to *Kelly* and *Brown* and distinguishable from *Zhou* and *Tudor.* The order granting Nissan's motion to strike barred essential expert witness testimony regarding Gordon's roof defect theory of liability. Without expert testimony, Gordon had no realistic way of proving his roof defect claim. Indeed, Nissan admitted in its notice of ruling that the order precluded Gordon "from introducing evidence of a theory that his injuries were caused by a defective design or unsafe condition of the roof of the subject vehicle." The trial court's erroneous order is therefore reversible per se.

2. *The Superior Court's Refusal to Give Gordon's Proffered Instruction On The Consumer Expectations Test Was Prejudicial Error**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is reversed. We remand the case to the superior court with directions to conduct a new trial in accordance with this opinion. Plaintiff Gordon is awarded costs on appeal.

Croskey, Acting P. J., and Aldrich, J., concurred.

A petition for a rehearing was denied February 26, 2009.

---

*See footnote, *ante*, page 1103.