Filed 7/28/14  Calvo, Fisher & Jacob v. Lujan CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CALVO FISHER & JACOB LLP,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAVID J. LUJAN,<br><br>    Defendant and Appellant. | A138210 & A138610<br><br>(San Francisco City & County<br>Super. Ct. No. CGC-10-498299) |

A prominent Guam attorney was sued in two lawsuits in Hawaii, followed by a third lawsuit in California, the last of which, were it to succeed, could have cost the attorney millions of dollars, loss of his reputation, and perhaps his license to practice law. The attorney hired a law firm with offices in San Francisco and Guam to represent him, a representation that quickly came to include the filing of two more proceedings. The representation was vigorous indeed, and quickly generated significant billings about which the attorney came to complain, ultimately refusing to pay a large balance.

The firm withdrew from the representation, and sued. Following a lengthy jury trial, the jury returned a verdict for the firm of $945,947.90, the full amount sought. The trial court later awarded $331,545.51 in prejudgment interest. The attorney appeals, making three arguments, that the trial court erred in: (1) excluding two items of evidence; (2) denying his motion for new trial; and (3) awarding prejudgment interest. We conclude that none of the arguments has merit, and we affirm.

1

## BACKGROUND

### The Setting:  The Parties, the Participants, and the Proceedings

Appellant David Lujan is an attorney in Guam, the senior partner in the firm of Lujan, Aguigui & Perez LLP.  Lujan is very experienced, having done "hundreds of trials," and is apparently well regarded, having represented many high profile people, including governors, lieutenant governors, and other politicians, in Guam and the Commonwealth of the Northern Mariana Islands.  But it was his representation of a minor named Junior Larry Hillbroom (Junior) that would lead to the appeal before us here.

In 1995, Lujan took on the representation of Junior, seeking to prove that Junior was an heir of Larry Hillblom (Hillblom), one of the founders of DHL Worldwide Express, who disappeared while piloting an airplane near Saipan.  Lujan's efforts on behalf of Junior were successful, with Junior ultimately receiving some $90 million from Hillblom's estate.  Lujan received a contingency fee, apparently of 38 percent.

The settlement with the estate closed in April 2000, but Lujan's involvement with Junior continued.  As Lujan described it at trial, "You know, just because the probate closed did not mean it's completely over, because there were assets that were distributed to what we call a liquidated trust . . . and so the liquidated trust was formed . . . ."  Keith Waibel was designated as trustee of Junior's trust, with Lujan to serve as a "protector" who oversaw the trustee.  Lujan continued on in his role as protector (and perhaps other roles as well) over the course of several years, during which he received substantial sums of money in connection with those services—substantial sums of money that led to Lujan being sued.  Specifically:

In October 2008, two actions were filed in Hawaii,  filed by Waibel, as trustee of the JLH Trust and the JLH Pacific Trust (the Hawaii actions).  The Hawaii actions essentially sought to recover monies the trustee claimed were owed the trusts by Lujan and his wife.  The Hawaii actions were relatively modest in scope, one involving $250,000 or less, the other a dispute with Waibel whether Lujan's monthly fees should be reduced.  The next action was far more serious.

In February 2009, Junior, now having reached the age of majority, filed suit in the United States District Court for the Central District of California, in an action entitled *Junior Larry Hillbroom v. David J. Lujan, Barry J. Israel, and Keith A. Waibel*, case no. CV 09-0841 (the California action). The California action was filed on behalf of Junior by the firm of Girardi Keese, a prominent plaintiff's law firm in southern California, and alleged claims for legal malpractice, breach of fiduciary duty, fraud, civil conspiracy, violations of 18 U.S.C. § 1961 et seq. (RICO), and violations of Business and Professions Code section 17200 et seq. The thrust of the California action was that Lujan conspired with Waibel (Junior's former guardian and the then-current trustee of his trusts) and Barry Israel (Lujan's co-counsel during his representation of Junior as a minor) to fraudulently increase the contingent fee in Junior's recovery from the Hillblom estate from 38 percent to 56 percent. The California action sought to recover millions of dollars, including punitive damages against Lujan.

It was at this point that Lujan turned to Eduardo Calvo.

Calvo is a lawyer in Guam, and the senior name partner in the firm of Calvo & Clark, which had offices in Guam and San Francisco.[1] Calvo was well known to Lujan, as Calvo had been involved as an attorney in the Hillbloom probate with whom Lujan had worked closely. And following the close of probate, Calvo had referred significant business to him. As Lujan described it, throughout the years, he and Calvo spent "hundreds of days and evenings . . . together" and, "I thought we were friends."[2] Thus, and because Calvo had practiced in Hawaii, Lujan decided to retain Calvo to represent him. In short, Calvo and the manner in which he represented his clients were well known to Lujan.

---

[1] Calvo & Clark is now known as Calvo Fisher & Jacob LLP.

[2] In fact, Lujan noted, "[A]fter the probate closed, I was approached by Mr. Calvo . . . , and what I was offered, you know, to become a partner in their firm, you know, to head the litigation, their litigation. Okay. [¶] And so I turned that down, but they, you know, asked me to co-counsel, you know, in several large cases, which I did. And so we spend, you know, throughout the years, hundreds of days and evenings, you know, together and we worked, we were able to work together."

In February 2009, Calvo & Clark prepared, and Lujan and his wife signed, a letter referenced "Engagement of Legal Services" (engagement letter)  The engagement letter was four pages long, single spaced, and began with confirmation of Calvo & Clark's "understanding that we will provide you with representation"  in the Hawaii and California actions.  The letter then described "the basis upon which we will provide legal services and bill for our services," followed by six numbered subjects.  The first was entitled "(1) Professional Undertaking," and provided as follows:  "**Professional Undertaking:**  The most important point in this letter is that we would undertake to do our utmost to serve you effectively.  I [Calvo] would have primary responsibility for such representation, and would utilize other attorneys and staff, as appropriate, in the best exercise of my professional judgment, based on their expertise, availability and general efficiency of work, administration and cost. . . .  Given our firm does not have an office in Honolulu or actively licensed members of the Hawaii State Bar, our firm will have to associate with counsel in Honolulu and seek admission to appear in the Hawaii cases as described."

The remaining subjects were labeled:  (2) fees, (3) costs, (4) Guam gross receipts tax, (5) billings, and (6) no retainer.  The language of two of these subjects, those numbered (2) and (4), is particularly germane to specific issues discussed below and will be set forth in connection with that issue.

Lujan became involved in two more lawsuits after the engagement letter was signed, and the parties agreed that the agreement would also cover these lawsuits.  The first of these lawsuits was filed in April 2009, by Calvo & Clark on behalf of Lujan in the Guam Superior Court (the Guam action).  The Guam action alleged among other things a claim for defamation against Girardi Keese, based on statements made to the press in Guam concerning Lujan's earlier representation of Junior.  The Guam action also asserted claims against Waibel and others, seeking to recoup monies Lujan asserted he was owed by Waibel, Junior, and one of the trusts under the contingency fee agreement.

The second post-engagement letter proceeding was Calvo & Clark's filing on Lujan's behalf a motion to reopen and unseal the *Guardianship of Junior Larry*

4

*Hillbroom*, Special Proceeding, Guam Superior court number JP0624-95 (the guardianship action). The guardianship action arose out of Calvo & Clark's defense of Lujan in the California action, where it developed that some pleadings and/or orders filed in the guardianship proceedings, now closed with the record sealed, might be necessary to the defense in the California action (and perhaps prosecution of the Guam action). That is, it appeared that Junior's counsel would cite or quote from the pleading if helpful to their case. But if a sealed record was damaging, they would assert it could not be publicly disclosed because it was under seal.

As noted, Calvo had "primary responsibility" for representation of Lujan, but many other lawyers at his firm would also become involved. In addition to Calvo, other attorneys at Calvo & Clark whose names will be mentioned are Kathleen Fisher, William Hebert, and Rodney Jacob. Fisher and Hebert practiced in the San Francisco office, Jacob in Guam.

The parties devote significant portions of their briefs to discussions of what was done in connection with the various proceedings, most significantly early in the California action, and whether Calvo & Clark's efforts were necessary or successful.[3] Not surprisingly, the accounts differ markedly. We see no need to weigh in on this dispute, as it is not pertinent to the issues Lujan raises here.

A few things are undisputed, however, and bear brief mention here. The first is that Calvo & Clark devoted significant resources to its representation of Lujan, and quickly generated significant legal fees. A second undisputed fact is that Lujan complained about the size of the bills and fell behind in paying them. A third is that the relationship was one where the client and his lawyers were in constant contact and communication, with testimony from Lujan and his expert witness, testifying from Lujan's own time records, confirming that in the months of February, March, April and

---

[3] We do note that Lujan was eventually dismissed from the California action on jurisdictional grounds.

5

May, they talked essentially every day, sometimes multiple times a day.[4] A final undisputed matter is that by March 2010 the representation was over, Calvo & Clark having withdrawn.

As of that point, Lujan had paid Calvo & Clark $326,180, with the firm claiming a balance owed of some $1,120,000. Calvo & Clark tried to negotiate resolution of the outstanding balance with Lujan, to no avail, leading to the action here.

**The Underlying Action**

In April 2010, Calvo & Clark filed a complaint for damages in San Francisco Superior Court. The complaint alleged claims for breach of contract, common count, quantum meruit, and account stated. The breach of contract claim sought damages of $1,181,034, plus prejudgment interest; the other three claims sought $1,027,435.89.

In December 2010, Lujan filed an answer and a cross-complaint. The cross-complaint asserted 10 causes of action against Calvo & Clark, styled as follows: (1) legal negligence; (2) breach of contract; (3) fraud in the inducement; (4) negligent and/or intentional non-disclosure of material facts; (5) bad faith; (6) unjust enrichment; (7) breach of fiduciary duty; (8) negligent misrepresentation; (9) abuse of process; and (10) accounting.

Over the following months, Calvo & Clark filed demurrers and motions, the effect of which was to eliminate all of Lujan's claims except for breach of contract and breach of the covenant of good faith and fair dealing. Along the way Calvo & Clark's noncontract claims went by the wayside, the upshot of which was that the matter proceeded to trial with each side asserting essentially its contract-based claims, including Lujan's bad faith claim. And Calvo & Clark's damage claim was now $945,947.90.

**The Trial**

The case proceeded to jury trial, which began on November 7, 2012, with motions in limine. The motions were extensive, and argument on them proceeded over three

---

[4] The communications were both by telephone and in person, as Lujan's office was some 200 feet from that of Calvo & Clark.

6

days. We do not know whether argument on the motions was reported, as no reporter's transcripts are in the record. The orders reflecting the various rulings are.

Testimony began on November 16 and was taken over 18 days. On December 12, after the close of Lujan's case on his cross-complaint, Calvo & Clark moved for nonsuit, which the court granted. Thus ended Lujan's action against Calvo & Clark, a ruling which Lujan has not pursued on appeal.[5]

On December 17 the jury returned its verdict for Calvo & Clark, awarding it $945,947.90, the full amount sought.

**The Motion for Prejudgment Interest**

Four days later, on December 21, Calvo & Clark filed a motion for prejudgment interest, seeking interest of 18 percent pursuant to the engagement letter. The trial court ultimately awarded Calvo & Clark interest, not at the rate requested, but at the rate of 10 percent, awarding $331,545.51. As noted, Lujan attacks the award of prejudgment interest, and the details of how the award came to be will be discussed below.

**The Judgment and Order**

On January 3, 2013, the court filed its judgment, which provided in pertinent part as follows: "NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that Calvo have and recover from Lujan the sum of $945,947.90 together with its disbursements and costs, including expert witness fees, in the amount of $_____, prevailing party attorneys' fees as allowed by contract in the amount of $_____, and pre-judgment interest as allowed by contract in the amount of $_____."

On March 4, Lujan filed a notice of appeal from the judgment entered on January 3 (case no. A138210).

On March 5, the court held a hearing on the motion for prejudgment interest.

On May 6, Lujan filed a notice of appeal that states that Lujan appeals "to challenge the court's decision awarding plaintiff prejudgment interest (case no. 139610).

---

[5] It is true that on February 15, 2013, Lujan filed a notice of appeal from the "trial court's order dated December 17, 2012 granting [Calvo & Clark's] motion for nonsuit." However, no argument in his brief addresses the issue.

The hearing on that motion was held on March 5, 2013. Lujan does not know at this time whether a written order has been entered by the court on that motion but assumes that one was entered."

On August 5, the court filed its order on the motion for prejudgment interest.

We ordered the appeals consolidated.

## DISCUSSION

### The Trial Court Did Not Err In Excluding Evidence

Lujan's first argument is that the trial court erred in excluding two items of evidence, the first of which was evidence concerning gross Guam receipts tax. As Lujan frames it, "The trial court's absolute exclusion of testimony showing that Calvo & Clark's San Francisco-based attorneys could charge a Guam-specific tax for work done outside Guam was based on an incorrect interpretation of the Engagement Letter." The argument has three subparts, as follows: (1) "The plain meaning of the Engagement Letter reveals the Guam Gross Receipts Tax surcharge applied only for work performed in Guam"; (2) principles of contract interpretation mandate that the provision should have been interpreted against Calvo & Clark; and (3) the trial court improperly interpreted the engagement letter. The argument has no merit, not in light of the record below.

Paragraph 4 of the engagement letter reads as follows: "*Guam Gross Receipts Tax*: It is our firm policy that our fees are net of taxes. In order that the fees be net of taxes we add a surcharge to cover the cost of our gross receipts tax. This would be part of any invoices and would be separately itemized. The surcharge, however, is considered an additional component and a part of our legal fees."

Lujan's argument is that "[t]he foregoing provision provides that Calvo & Clark will 'add a surcharge to cover the cost of our gross receipts tax' but fails to state that surcharge shall apply to work performed outside of Guam. In fact, Lujan attempted to present evidence that Lujan and Calvo & Clark agreed to limit the gross receipts tax based on an understanding that tax for services outside Guam would not be charged, but

8

the trial court erroneously precluded that evidence based on the parol evidence rule." This is hardly an accurate statement of the proceedings below.

The accurate record begins with a discussion of Calvo & Clark's in limine motion number one, which sought among other things "an order *in limine* that the parties' written Engagement Agreement is integrated, and to exclude parol evidence regarding the parties' oral understanding, interpretation, and implied terms of the Agreement expected to be offered by Defendant and Cross-Complainant David Lujan at trial; specifically: [¶] 1. The Guam Gross Receipts Tax would not be charged for work in the California action . . . ."

That motion was, as noted, argued before trial, and on November 9, 2012, the trial court entered its order on it, as follows: "IT IS HEREBY ORDERED that Calvo's Motion in Limine No. 1 is GRANTED IN PART AND DENIED IN PART as follows: [¶] 1. Motion in Limine No. 1 to exclude all argument and evidence that the Guam Gross Receipts Tax would not be charged for work done by Calvo during its representation of him in all matters is GRANTED . . . ."

As also noted above, there is no reporter's transcript on the in limine arguments, so we do not know what was said at the argument or the actual basis of any ruling by the trial court. This is most unhelpful to Lujan. As a leading practice treatise puts it, "**Transcript may be essential for appellate review:** Unless a court reporter is present, the losing party may have no effective way of challenging the court's ruling by writ or appeal; 'In the absence of a transcript, the reviewing court will have no way of knowing . . . what grounds were advanced, what arguments were made, and what facts may have been admitted, mutually assumed or judicially noticed at the hearing. *In such a case, no abuse of discretion can be found except on the basis of speculation*.' [*Snell v. Sup.Ct. (Marshall Hosp.)* (1984) 158 CA3d 44, 49 (emphasis added); see also *GT, Inc. v. Sup.Ct. (Santa Cruz Sentinel Publishers, Inc.)* (1984) 151 CA3d 748, 756] [¶] [9:173] *PRACTICE POINTERS*: If you are appearing in a court in which law and motion hearings are not regularly recorded, and there is the slightest chance you would seek appellate review if the judge rules against you, be sure to have a court reporter present!"

9

(Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2014) ¶ 9.172–9.173, pp. 9(l)-132.)

As Lujan's brief acknowledges, "[g]enerally, a trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion." As the above authorities demonstrate, such review is precluded by the absence of a transcript. (See generally *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 132; *Parker v. Harbert* (2012) 212 Cal.App.4th 1172, 1178; *Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324.)

Lujan's argument on this issue includes that the trial court should have allowed evidence that "Calvo & Clark charged the Guam Gross Receipts Tax on every payment made by Lujan." This, Lujan claims, would have reduced the jury award, because "Calvo & Clark were not permitted to impose a surcharge for a tax that did not exist." This argument fails, because the evidence Lujan says the trial court excluded was in fact presented to the jury. And Lujan's argument that Calvo & Clark incorrectly applied the gross receipts tax is false. Put succinctly, not only did Lujan fail to offer any evidence to support his claim, but the actual evidence refutes it.

First, Lujan is wrong when he claims that the trial court excluded evidence of how often the gross receipts tax was billed to him. To the contrary, every invoice from Calvo & Clark was introduced, and every one shows the amount of gross receipts tax for which Lujan was billed. Lujan cannot seek reversal of the judgment based on exclusion of evidence that was, in fact, not excluded.

Second, Lujan claims Calvo & Clark charged him for the gross receipts tax even when the firm did not have to pay that tax, asserting that it did not pay the gross receipts tax "for services outside Guam." But at no point did Lujan offer any evidence to support this claim. Lujan made no offer of proof—not through proffered testimony, not with reference to regulations or statutes, not by any other means—to show that the firm "was improperly adding a surcharge to his bills." Judgments "cannot be set aside on the ground that the court erroneously excluded evidence unless the substance, purpose and relevance of the excluded evidence were made known to the court by an offer of proof or

10

by other means." (*Gordon v. Nissan Motor Co., Ltd.* (2009) 170 Cal.App.4th 1103, 1113.) In the absence of any evidence to support Lujan's claim, it cannot succeed. (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574 [appellant bears the burden to provide a sufficient record for review].)[6]

Lujan's second claim of evidentiary error is that the trial court abused its discretion when it denied his motion to reconsider the in limine ruling concerning hourly rates, a claim that, once again, requires reference to the engagement letter and a motion in limine.

Section 2 of the engagement letter, entitled "Fees," provides that Calvo & Clark's "fee will be based on the hourly rate applicable to the attorney's home office." Calvo & Clark filed an in limine motion to exclude parol evidence concerning this language, because "[o]n its face, this provision unambiguously acknowledges that hourly rates charged for an individual attorney will be tied to the rates of that attorney's home office." The trial court agreed, its order reading in pertinent part as follows: "Motion in Limine No. 1 to exclude all argument and evidence that San Francisco based attorneys billing San Francisco rates would not be used in the Hawaii cases and Guam matters is GRANTED."

Lujan does not challenge that ruling on appeal. Rather, he argues that a later motion to reconsider was improperly denied, contending that testimony adduced at trial constituted "significant conflicting evidence" regarding the fee provision. The conflicting evidence Lujan cites is testimony where, he claims, Calvo said "that attorney William Hebert was billing his Guam rate, not his San Francisco rate." Because of this claimed conflict, Lujan argues, the trial court should have reconsidered its in limine

---

[6] We note that not only does Lujan fail to provide any support for this argument, he also fails to note that the only evidence in the record was to the contrary. Specifically, in support of its motion for summary judgment, Calvo & Clark had offered uncontroverted evidence that the gross receipts tax is "based on the *total amount of legal fees* received from [Calvo & Clark's] clients," and further that "each time [Lujan] made a payment of legal fees to Calvo & Clark, it made a corresponding payment of the Guam [gross receipts tax.]"

ruling, and its failure to do so "preclude[d] Lujan's attempt to proffer testimony that Calvo & Clark's San Francisco attorneys were improperly billing San Francisco rates outside California." The argument fails, for several reasons.

To begin with, we review a denial of a motion for reconsideration for abuse of discretion. (*Farmers Ins. Exchange v. Superior Court* (2013) 218 Cal.App.4th 96, 106; *Gilberd v. AC Transit* (1995) 32 Cal.App.4th 1494, 1500.) We find no abuse, and Lujan certainly does not demonstrate any, not in light of the record here. There was no conflicting evidence about the rate Hebert was charging, much less "significant" conflicting evidence.

Throughout Calvo & Clark's representation of Lujan, Hebert was billed at his San Francisco rate, not his Guam rate. All of Calvo & Clark's bills were in evidence, and all showed Hebert billing at $500 per hour. Hebert himself testified he charged Lujan $500 per hour. No evidence—no testimony, no document—showed Hebert ever billing any other rate.[7]

The two record references to which Lujan points—reporter's transcript pages 580 and 1099-1100— do not support his position.[8] The first citation is to testimony about an estimate of fees that Hebert later prepared during litigation. That estimate—which Hebert described as a "sort of back of the envelope calculation" and a "best guess of what we'd be doing over the next three months"—estimated the average rate for attorney fees in the California action at $350. Lujan does not explain how this estimate indicates that Hebert was charging his Guam rate.

Beyond that, the testimony itself, which Lujan does not quote, is devastating. It demonstrates that Calvo did not say Hebert was billing at $350, but rather that the $350 per hour figure *did not include* Hebert's time. Thus:

---

[7] It was clear from the engagement letter that $500 per hour had to be a San Francisco billing rate, the letter explaining that the top hourly rate for attorneys in Guam was $350 while the top hourly rate in San Francisco was $550.

[8] Lujan's brief also cites reporter's transcript pages 1132-1133. Those pages deal only with the argument on reconsideration, not evidence.

12

"A. We used [the estimate] as a tool. I mean, it's not anything that we were going to produce in a formal document or—or make a request for fees. [¶] It was an internal tool to try to figure out what was going on in these cases and how much time would be involved, and what it would likely cost to get these things accomplished.

"For instance, obviously, in California, Bill Hebert was the lead attorney in the California case. And he's not included in any of these because his billable rate was higher than 350.

"Q. Do you know why that—

"A. This is the—this is the Guam rate."

Reporter's transcript pages 1099-1100, the other record reference Lujan cites, makes only the point that Hebert had two rates:

"Q. Okay. You have a California billing rate, do you not, or at least you certainly did in 2009, correct?

"A. Yes.

"Q. At that time it was $500 per hour?

"A. Yes.

"Q. Okay. Did you have a Guam billing rate?

"A. Yes."

In sum, contrary to Lujan's assertion, there is no evidence that "Hebert was billing his Guam rate, not his San Francisco rate." The statements introduced in evidence in fact show that during every month Hebert worked on Lujan's cases, he was billed to Lujan at his San Francisco rate, just as the engagement letter expressly stated.

Finally, the argument Lujan makes to us is not the argument he made below when he sought reconsideration of the in limine ruling. Lujan did not argue in the trial court that "Hebert was billing his Guam rate, not his San Francisco rate." Rather, he argued that Calvo may have had "a policy of charging Guam rates . . . for San Francisco lawyers doing Guam work, and didn't tell that" to Lujan. Whether Calvo & Clark may have had such a policy, it had nothing to do with the issue here. The engagement letter set the

13

terms for Calvo & Clark's representation of Lujan. Whatever agreement it may have had with other clients was irrelevant.

In concluding the discussion on the issue of claimed evidentiary error, we are constrained to note that neither of the two items about which Lujan complains—the Guam gross receipts tax and the billing rate—were among the things Lujan expressed concern about in his communications with the lawyers at Calvo & Clark. Specifically:

As mentioned above, early on Lujan expressed concern about the fees, and both sides offered testimony about the conversations and meetings that ensued about the fees, testimony that is most divergent. But some of what transpired on the subject is not disputed, especially as it comes from Lujan himself. Such testimony includes that the parties had discussions about the fees, and they also corresponded about the fees. This correspondence was introduced in evidence at trial, and included a series of letters in November 2010, including one from Lujan on November 30, which was testified about at length.

That testimony revealed that Lujan's letter was in response to a November 13 letter from Calvo, which had responded in detail to Lujan's early protestations. According to Lujan, prior to writing his November 30 letter, he had "spent approximately 60 hours of [his] own time reviewing the invoices." Lujan's letter went on to analyze the services "for the five matters." And nowhere in the letter did Lujan complain about the quality of the work; rather, in Lujan's words, "It's the cost of the work is my complaint." Confirming this testimony on redirect, Lujan said his complaints were that the bills were "too high" and that too many people worked on the matters. But of most significance here, nowhere in the letter of November 30, or in any other letter, or in any of the conversations Lujan claimed to have with any attorney at Calvo & Clark, did Lujan ever mention, much less complain about, the Guam gross receipts tax or Hebert's billing rate.

**Lujan's Motion for New Trial Was Properly Denied**

Lujan's second argument is that the trial court erred in denying his motion for new trial, an argument phrased as follows: "In his motion for new trial, Lujan raised, among other arguments, evidentiary errors that resulted in an excessive jury award. Specifically,

14

that the fees Mr. Eduardo Calvo incurred on the California Action should not have been considered because Mr. Calvo engaged in the unauthorized practice of law in California by not being admitted to the California bar."

By way of background, Lujan's motion for new trial asserted 11 grounds. Only one claimed excessive damages. It was Argument E, which read as follows: "E. The Jury Awarded Excessive Damages Based on Invoices That Were Submitted by Calvo in Violation of California Law." The argument itself was all of 20 lines, the first eight of which were general observations about clarity in billing, the basis for calculation of attorney fees, and related items. The entire substance of the "excessive damages" argument was this: "In this particular case, however, virtually all of the time entries submitted by Calvo—with very few exceptions—included block-billing; i.e., the practice of commingling various services in one entry without segregating the amount of time spent on each service. This violates the statutory language italicized above, thus precluding Calvo from recovering fees for the block-billed services. Accordingly, the court should aside [*sic*] the verdict, particularly in light of the erroneous admission of expert testimony by Calvo that was inconsistent with this statutory standard. (See *Day v. Rosenthal* (1985) 170 Cal.App.3d 1125, 1147 [standards set by the rules of professional conduct for attorneys 'cannot be changed by expert testimony'; superseded by statute on other grounds]; CCP § 657, subd. (1) [evidentiary rulings by which improper evidence was erroneously admitted may trigger a new trial when prejudicial to the moving party's right to a fair trial].)"

As is apparent, the motion did not claim excessive damages based on Calvo "engag[ing] in the unauthorized practice of law in California by not being admitted to the California bar."

It is true that in his next argument on the motion for new trial, an argument styled "The Court Improperly Precluded Lujan from Defending Himself and from Pursuing His Affirmative Claims for Relief," Lujan made the following assertion: "The court erroneously granted various motions in limine that precluded Lujan from disputing the bills presented by Calvo. For example, the court precluded testimony that San

15

Francisco-based attorneys, billing at the higher San Francisco rates, were not supposed to be working or billing for work done in other jurisdictions (e.g., Hawaii and Guam). To the extent that Calvo's California attorneys were billing for work done in other jurisdictions where a particular attorney was not licensed in those jurisdictions, Lujan was legally entitled to defeat Calvo's claim for such attorneys' fees based on this licensing issue. (See *Birbrower, Montalbana, Condon and Frank v. Superior Court* (1998) 17 Cal.4th 119, 136 ['It is a general rule that an attorney is barred from recovering compensation for services rendered in another state where the attorney was not admitted to the bar'].)" This, we conclude, is not sufficient.

As Calvo & Clark accurately puts it: "[I]n his motion for new trial, Lujan argued Calvo should not be paid for work done by a *California* lawyer outside California (although he cited no evidence to support this contention). His argument now is that Calvo should not have been paid for work that a *Guam* attorney did in *California*. Lujan never raised this claim below. He never sought to admit evidence of the alleged unauthorized practice of law, and he did not raise this issue *in limine*, during trial, or in his new trial motion."

Faced with this, Lujan's reply says only that "an objection is sufficient if it fairly apprises the trial court of the issue it is being called upon to decide." We conclude that Lujan's argument did not "fairly apprise the court of the issue," and that the argument is not before us.

As the leading treatise puts it: "**New Theories Not Reviewable on Appeal:** As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal; appealing parties must adhere to the theory (or theories) on which their cases were tried. This rule is based on fairness—it would be unfair, both to the trial court and the opposing litigants, to permit a change of theory on appeal; and it also reflects principles of *estoppel* and *waiver* (¶*8:244 ff.*). [*Greenwich S.F., LLC v. Wong* (2010) 190 CA4th 739, 769, 118 CR3d 531, 554 (citing text); *Giraldo v. California Dept. of Corrections & Rehabilitation* (2008) 168 CA4th 231, 251, 85 CR3d 371, 386 (citing text); *People ex rel. Dept. of Transp. v. Super. Ct. (Isenhower)* (2003) 105 CA4th 39, 46,

16

(citing text); *Brown v. Boren* (1999) 74 CA4th 1303, 1316, 88 CR2d 758, 767 (citing text); citation.]." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2013) § 8:229, p. 8-156.)

Beyond that, the record reveals that Calvo & Clark moved in limine to exclude all argument and evidence regarding Calvo's alleged unauthorized practice of law unless Lujan made an offer of proof substantiating his claim. Lujan made no offer of proof and, indeed, did not even oppose the motion, the court's order reading as follows: "Motion in Limine #5F to exclude all argument and evidence of unsupported allegations that Calvo engaged in the unauthorized practice of law is *unopposed* and GRANTED." (Italics added.)

In sum, Lujan did not oppose Calvo's motion *in limine*, made no offer of proof regarding the claimed unauthorized practice of law, and did not raise this claim at any time prior to appeal. The claim must fail. (*See Mangano v. Verity, Inc.* (2009) 179 Cal.App.4th 217, 221 [defendant who failed to oppose *in limine* motion to exclude evidence forfeited his ability to argue in a motion for new trial and on appeal that the evidence was improperly excluded].)

**The Award of Prejudgment Interest Was Proper**

Lujan's final argument is that the award of prejudgment interest must be reversed. Lujan does not contest the $331,545.51 amount of the award. Rather, he makes an all or nothing claim, that Calvo & Clark should recover nothing, on the basis that Calvo & Clark failed to follow the proper procedure for seeking prejudgment interest. This is Lujan's argument: "[A] trial court cannot award prejudgment interest after judgment is entered unless the party seeking such relief first files a motion for new trial in order to recover prejudgment interest. (See *North Oakland Medical Clinic v. Rogers* (1988) 65 Cal.App.4th 824, 831 [(*Rogers*)] ['requests for prejudgment interest . . . by a successful plaintiff must be made by way of motion *prior* to entry of judgment, or the request must be made in the form of a motion for new trial no later than the time allowed for filing such a motion'] [emphasis added].)"

17

It is probably enough to note that Lujan's premise—that a party must file a "motion for new trial"—is undercut by Lujan's own quotation from *Rogers, supra,* 65 Cal.App.4th at p. 831, which states a request for prejudgment interest can be made in two ways, one of which is by a motion prior to entry of judgment. As alluded to above, and discussed in detail below, Calvo & Clark filed such a motion on December 21, 2012, before the judgment of January 13, 2013. Calvo & Clark proceeded properly.

*Rogers*, an opinion authored by our own Presiding Justice Kline, is the leading case on the proper procedure to obtain prejudgment interest. The issue there arose when prevailing plaintiffs filed a memorandum of costs but did not request prejudgment interest. Judgment was entered and the court denied defendants' motion for new trial. Plaintiffs then inserted an award of interest in the proposed order presented to the trial court, which the court granted. We held that was error. But our holding in *Rogers* does not avail Lujan, where we observed as follows:

"Under [Civil Code] section 3287, subdivision (b) the court has discretion to decide whether prejudgment interest should be awarded on an unliquidated contractual claim. It is up to the judge to determine the date from which interest runs, but in no event may the court fix a date earlier than the filing of the action. (*George v. Double-D Foods, Inc.* (1984) 155 Cal.App.3d 36, 47–48; Wegner et al., Civil Trials [and Evidence (The Rutter Group 2013)] ¶ 17:189, [p. 17-151].)

"The parties agree that there is no authority mandating any particular procedure for securing an award of prejudgment interest. However, certain general principles apply:

"That a party is entitled to prejudgment interest does not make an award automatic (except in the case of postjudgment interest). A request for interest must be made in the trial court; it cannot be made for the first time on appeal. (Wegner, Civil Trials, *supra*, ¶ 17:194, [p. 17-152]; *Peoples Finance etc. Co. v. Mike-Ron Corp.* (1965) 236 Cal.App.2d 897, 904.)

"A general prayer in the complaint is adequate to support an award of prejudgment interest. 'No specific request for interest need be included in the complaint; a prayer

18

seeking "such other and further relief as may be proper" is sufficient for the court to invoke its power to award prejudgment interest. [Citations.]' (Wegner, Civil Trials, *supra*, ¶ [17:195, p. 17-152]; *Segura v. McBride* [(1992)] 5 Cal.App.4th 1028, 1041; *Newby v. Vroman* (1992) 11 Cal.App.4th 283, 286.) . . . .

"The trial judge, not the jury, determines a prejudgment interest award on unliquidated damages. (*George v. Double-D Foods, Inc., supra,* 155 Cal.App.3d at p. 47; Wegner, Civil Trials, *supra*, ¶ 17:189, [p. 17-151].) [¶] . . . [¶]

"The issue here is not whether plaintiffs' complaint adequately invoked the court's power to award prejudgment interest, should plaintiffs prove entitled to interest. Rather, the question we address is whether plaintiffs timely requested the court to exercise its power to determine whether plaintiffs were entitled to interest under [Civil Code] section 3287 in circumstances where damages had been awarded but no interest was included in the verdict and where neither court nor jury had determined whether the damages were liquidated or unliquidated. Our answer is no.

"The parties acknowledge that no statute or rule of court establishes a procedure for requesting an award of prejudgment interest, or a time limit therefor, in the superior court. . . . [¶] . . . [¶]

"It is well established that prejudgment interest is not a cost, but an element of damages. [Citations.] This distinction persuades us that the cost bill is *not* an appropriate vehicle for requesting interest under [Civil Code] section 3287. In our view, prejudgment interest should be awarded in the judgment on the basis of a specific request therefor made *before* entry of judgment. This view is buttressed by California Rules of Court, [former] rule 875, which provides: 'The clerk shall include in the judgment any interest awarded by the court and the interest accrued since the entry of the verdict.' (Cal. Rules of Court, [former] rule 875.)

"It further appears that, at the latest, a request for prejudgment interest under [Civil Code] section 3287 may be sought as part of a motion for new trial pursuant to Code of Civil Procedure section 657, on the grounds of '[e]xcessive or inadequate

19

damages.'  (Code Civ. Proc., § 657, [¶] 5.)"  (*Rogers, supra,* 65 Cal.App.4th at pp. 829-830, fn. omitted.)

And so we concluded:  "Pending the promulgation of a rule by the Judicial Council, which we think appropriate, requests for prejudgment interest under [Civil Code] section 3287 by a successful plaintiff must be made by way of motion prior to entry of judgment, or the request must be made in the form of a motion for new trial no later than the time allowed for filing such a motion.  (Code Civ. Proc., § 659.)"  (*Rogers, supra,* 65 Cal.App.4th at p. 831.)

*Rogers* demonstrates that Calvo & Clark's request for prejudgment interest was timely.

As indicated above, the jury returned its verdict on December 17, 2012.  On December 21, Calvo & Clark filed its motion for prejudgment interest.  The motion listed as the hearing date "TBA,[1]" indicating in the footnote that "Counsel in the above-captioned matter have stipulated to a briefing schedule for post-trial motions and have agreed to confer with the court to reach a mutually acceptable hearing date for those motions.  Counsel intends for this motion to be heard in conjunction with the parties' other pre-trial motions, and thus has not selected a hearing date for this motion at this time."  Later, on January 3, Lujan's attorney agreed to a February 27 hearing date on the motion for prejudgment interest, going on to move the court for an additional 45 days postponement of the hearing date.

Meanwhile, on January 3, 2013, the court entered a judgment that provided as follows:  "NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that Calvo have and recover from Lujan the sum of $945,947.90 together with its disbursements and costs, including expert witness fees, in the amount of $_____, prevailing party attorneys' fees as allowed by contract in the amount of $_____, and pre-judgment interest as allowed by contract in the amount of $_____."  In short, the judgment itself—not incidentally, "approved as to form" by Lujan's attorney—indicated that prejudgment interest was an issue.

20

*Steiny & Co. v. Cal. Elec. Supply Co.* (2000) 79 Cal.App.4th 285 is persuasive. There, the parties stipulated that the court would determine the amount of prejudgment interest after entry of judgment, even though the plaintiff had not made a request before entry of judgment. (*Steiny, supra,* 79 Cal.App.4th at p. 290.) On appeal, the defendant, like Lujan, disregarded the stipulation and claimed plaintiff's motion was too late. (*Id.* at p. 294.) The court easily rejected the argument:

"Finally, Morley asserts that Steiny's failure to seek prejudgment interest prior to the entry of the stipulated judgment defeats the claim for interest, citing *North Oakland Medical Clinic v. Rogers*[*, supra,*] 65 Cal.App.4th 824, [at pp.] 830-831 (prejudgment interest may not be sought by inserting amount at last minute in cost award, without notice to other party, and after verdict and postjudgment motions for new trial and to tax costs had been heard and decided).

"Civil Code section 3287 creates the right to prejudgment interest on damages. As the court in *North Oakland* noted, neither section 3287, nor any other rule, specifies when prejudgment interest must be sought. The court concluded that there must be some deadline, and that such a request made after judgment and after completion of postjudgment proceedings, without notice to the adversary, is too late.

"The present case bears no resemblance to the extreme facts in *North Oakland*. Steiny requested interest in its complaint, and Morley stipulated before judgment was entered that Steiny's request for interest would be adjudicated in a postjudgment hearing.

"The award of postjudgment interest was proper." (*Steiny, supra,* 79 Cal.App.4th at p. 293.)

Calvo & Clark's request for prejudgment interest was timely, and Lujan was not denied notice or an opportunity for a hearing. To the contrary, Lujan agreed to a form of judgment that included a provision for prejudgment interest, agreed to the briefing

schedule he now criticizes, and stipulated to the motion being heard after entry of judgment.[9]

## DISPOSITION

The judgment and order appealed from are affirmed.  Calvo, Fisher & Jacob shall recover its costs on appeal.

_____
Richman, J.

We concur:

_____
Kline, P.J.

_____
Brick, J.[*]

---

[9] In one paragraph at the conclusion of its respondent's brief, Calvo, Fisher & Jacob "moves the court" for an award of attorney fees on appeal.  We will not consider the request, especially as the issue of attorney fees is the subject of a separate appeal currently pending before this court.  (*Calvo Fisher & Jacob LLP v. Lujan*, case no. A139863.)

[*] Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.